THE LEHIGH VALLEY TRANSPORTATION COMPANY, Appellee, *vs.* THE CITY OF CHICAGO, Appellant.

*Opinion filed December 15, 1908—Rehearing denied Feb. 4, 1909.*

MUNICIPAL CORPORATIONS—*city liable for negligence of bridge-tender.* A pivot or swinging bridge at the intersection of a street with a stream is part of the street, and the city is liable for the negligence of the bridge-tender in the management of the bridge, the same as it is liable for an injury resulting from a negligent failure to discharge its duty to keep streets in proper repair.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on writ of error to the Municipal Court of Chicago; the Hon. WILLIAM N. COTTRELL, Judge, presiding.

This is an appeal by the city of Chicago from a judgment of the Appellate Court for the First District affirming a judgment of the municipal court of Chicago for the sum of $115.55, recovered by the Lehigh Valley Transportation Company against appellant.

The case was tried in the municipal court without a jury, upon a stipulation of facts, from which it appears that appellant owns and operates over the Chicago river, at the

point where Madison street, in said city, intersects the said river, a pivot or swinging bridge. The bridge was built and is maintained and operated solely from funds derived from general taxation of the property lying within the said city and the city receives no revenue therefrom. It is operated by an employee of appellant, and it is so constructed that when it is necessary to open the bridge to permit a vessel to pass through, it may be swung completely around. On July 29, 1907, a vessel belonging to the appellee was moored at a dock about thirty feet west of the bridge, in such a position that the bridge could not be swung in a complete circle without being brought in contact with said boat. Through the negligence of the bridge-tender, while attempting to close the bridge after it had been opened to permit a vessel to pass through, the structure swung against appellee's boat and damaged it to the extent of $115.55. Appellant obtained from the Appellate Court a certificate of importance.

EDWARD J. BRUNDAGE, Corporation Counsel, CHARLES M. HAFT, and EMIL C. WETTEN, for appellant.

ULLMANN & HOAG, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The appellant contends that the city, in operating the bridge, was acting in its public or governmental capacity as distinguished from its private or corporate capacity; that for this reason the doctrine of *respondeat superior* has no application and the city cannot be held liable. This question arises upon propositions of law passed upon by the court.

The bridge was a part of the street. Cities have always been held liable in this State for injuries resulting from negligence in the care or management of their streets. This case is of that character. That the city is liable for the

negligence of its bridge-tender in the management of such a bridge was recognized by this court in the case of *City of Chicago* v. *O'Malley*, 196 Ill. 197. In that case the bridge-tender, Moriarity, had employed O'Brien as a helper without being authorized so to do by the city. Moriarity started to turn the bridge and directed O'Brien to look out for the boys who were on the bridge so that they would not get hurt. O'Brien picked up a stick for the purpose of driving the boys off the bridge, but Moriarity, without waiting for them to leave the structure, commenced turning the bridge. O'Brien ran towards the boys in a threatening manner with the stick, and one of them, in attempting to reach the sidewalk from the bridge, fell between the end of the moving bridge and the abutment and received the injuries for which he sued. The city contended, among other things, that it was not liable because O'Brien was not its servant. This court said: "Whatever was done by O'Brien was done by the direction and with the knowledge of Moriarity, who was the agent of the city and who owed the duty to conserve the public safety in the operation of the immense and dangerous structure of which he had charge. Moriarity was controlling the movement of the bridge with the full knowledge of the acts of O'Brien and the peril of appellee, and it cannot be said, under the evidence, as a matter of fact or law, that O'Brien's acts alone were responsible for the injury. Being apprised of the danger, Moriarity owed the duty of so controlling the movements of the bridge that injury should not result," and the judgment was affirmed on the theory that Moriarity's negligence entitled the appellee to recover from the municipality. It does not seem that any contention was made in that case that the city was not liable for the acts of the bridge-tender. The opinion, however, clearly recognizes the existence of that liability, and, on principle, cases of the character of that one' and of the one at bar cannot be distinguished from innu-

merable cases which have been determined by this court in which it has been held that a city is liable for an injury resulting from a negligent failure to discharge its duty in reference to keeping its streets in repair. (See, also, *Gathman* v. *City of Chicago,* 236 Ill. 9.) It cannot, under the law of this State, be here held that the city, in operating the bridge, was acting in its governmental or public capacity.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*.