## Catherine C. Caspers, Administratrix, Appellee, v. Anglo-American Provision Company, Appellant.

### Gen. No. 15,509.

1. ORDINANCES—*"permit" construed.* The word "permit" as used in the ordinance in question in this case which pertained to horses running at large, *held,* to import at least acquiescence, passivity, or abstaining from preventive action.

2. NEGLIGENCE—*with respect to horses at large. Held,* that the evidence did not establish negligence in either failing to hitch a horse or in failing to keep a gate closed in consequence of which the horse ran at large.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the October term, 1910. Reversed. Opinion filed February 16, 1911. Rehearing denied March 2, 1911. *Certiorari* denied by Supreme Court (making opinion final).

FRANK M. COX and R. J. FELLINGHAM, for appellant.

THOMAS G. VENT, for appellee.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

Plaintiff's intestate was struck by a horse and wagon of the defendant and so injured that he died, leaving a widow and children. In an action under the statute on the alleged ground that the death of the deceased was caused by the negligence of the defendant, plaintiff had judgment for $5,325, and the defendant appealed. As to the material evidentiary facts of the case there is no controversy. The defendant had in the Union Stock Yards a large manufacturing plant. On the south side of this plant was a roadway, and south of the roadway were railroad tracks. North of and fronting on the roadway was a yard of defendant 100 feet square, in which were two loading platforms, from which products were loaded into defendant's wagons. Switch tracks led from the railroad tracks into the

yard through a gate of two leaves. Through this gate defendant's teams also passed in entering or leaving the yard. The roadway ran west a block from the yard and thence north to defendant's stables.

Williams, a driver of defendant, was on the day of the accident driving a draft horse eight or nine years old, weighing 1,350 pounds, hitched to a wagon. The half hour from noon to 12:30 was allowed for dinner. When the noon whistle blew the wagon was backed up to a loading platform in the yard and Williams proceeded to feed his horse. He took the bit out of the horse's mouth, buckled a nose-bag containing oats over his head and fastened the bridle to his head with the bit out of his mouth. The horse was quiet, gentle, not afraid of cars or engines, had been driven in and about the Stock Yards two years, had never run away nor shown any disposition to run away. Williams had driven him six weeks, had never hitched him while eating and did not on this day. Williams ate his dinner at the yard master's office, twenty-five feet from the horse. When the whistle blew at 12:30 he went to the horse to put his bridle on. He took off the nose-bag, took the bit to put it in the horse's mouth, the horse reared up, pulled the bridle off, and Williams caught him by the nose. He held on to him for some time, the horse trying to get away, until the horse came near to a platform, and Williams, seeing that he was in danger of being hurt, let go of him. One leaf of the gate was open, and the horse ran out of the yard through the gate, turned west and ran west and then north to his stable, still hitched to the wagon. Deceased was a car repairer in the service of the defendant, and was going to his work. He was on the roadway, a short distance west from the gate, and without fault on his part was struck by the horse, knocked down, run over by the wagon, and thereby sustained the injuries which caused his death.

The first count of the declaration sets out the following ordinance of the city of Chicago: "No person hav-

ing the charge, custody or control thereof, shall permit any horse, mule, ass, ox, cow, goat, pig or other like animal to go loose or at large in any of the public ways in the city under a penalty of not more than $10 for every such offense," and alleges that the defendant negligently suffered said horse hitched to a wagon to go at large on a highway in said city, whereby, etc. Conceding that the roadway in question was a "public way" within the meaning of the ordinance, we do not think that on the evidence in this case it can be held that the defendant *permitted* the horse "to go loose or at large" on such "public way." The word "permit" as used in the ordinance imports at least acquiescence, passivity, abstaining from preventive action. Here there is no evidence tending to show acquiescence, passivity or abstaining from preventive action on the part of the defendant, but the evidence clearly shows that the driver of the horse did all in his power to prevent him from going on the "public way."

It is further alleged in the declaration and contended by appellee here, that the failure to hitch the horse, the failure to keep the gate leading into the yard closed, were each acts of negligence, and also that the defendant negligently suffered said horse to escape from its control and go on said public way. The horse was harnessed and hitched to a wagon, was gentle, quiet, accustomed to stand without hitching, and we do not think it was an act of negligence to fail to hitch him, under the circumstances shown by the evidence. Again, if the failure to hitch the horse could be held to be an act of negligence, that act did not cause or contribute to the escape of the horse from the yard. The driver had returned to the horse and begun to put the bit in his mouth before the horse attempted to run away.

It was not, in our opinion, an act of negligence, under the circumstances shown by the evidence, to have the gate leading to the yard open.

To entitle the plaintiff to recover in this case there must be evidence from which the jury might properly

find that the death of plaintiff's intestate was caused by "wrongful act, neglect or default" of the defendant. Our conclusion on a careful examination of the evidence in the record is, that there is no evidence from which the jury might properly find that the death of plaintiff's intestate was caused by the "wrongful act neglect, or default" of the defendant, and the judgment will therefore be reversed.

*Reversed.*