Edna Blackaby, Appellant, v. City of Lewistown,
Appellee.

Gen. No. 8,560.

64 

October term, 1931. Heard in this court at the
Opinion filed February 1, 1932.

FRED H. SNYDER, for appellant.

LYLE THOMAS, City Attorney, and BOYD, RATCLIFF & WEBER, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This was an action commenced by the appellant against the appellee (appellee being a municipal corporation) returnable to the January Term, A. D. 1931. The declaration contained two counts.

The first count set forth that the City of Lewistown was possessed and had control of a certain public street and sidewalk in the City of Lewistown located on the north side of the public square in the City of Lewistown, Fulton county, in front of a building owned by one David Sheets and occupied by James Sorenson, in about the middle of the block on said north side of the public square, being about equal distance between Main street and Adams street, which said streets run north and south in said City of Lewistown, Fulton county; and it became and was the duty of the defendant to keep said streets and sidewalks at the time and place aforesaid, in a reasonable and safe condition for travel by the general public, yet the defendant disregarding its duty in that behalf while it was so possessed and had control of said sidewalk and other streets and sidewalks around the public

square and courthouse of the City of Lewistown aforesaid, there wrongfully, unlawfully and negligently permitted divers persons organized as a business men's club or an association composed of business men and merchants of the City of Lewistown aforesaid, to take possession of said streets and sidewalks around the public square and courthouse in said City of Lewistown for the purpose of giving shows or exhibitions on said streets and sidewalks aforesaid, and at the time and place aforesaid, and for the purpose of giving publicity to said show, turkey trot or exhibition, said business men or merchants of the City of Lewistown aforesaid, did on the 20th day of November, A. D. 1929, cause to be published in the FULTON COUNTY DEMOCRAT, a secular newspaper of general circulation, and published in the City of Lewistown aforesaid, an advertisement of said show, exhibition and turkey trot in words and figures as follows:

Come to Lewistown's Annual Turkey Trot, Tuesday, Nov. 26th—Day and Night.

153 Live Birds and Pigs Given Away. 153

Absolutely Free!

| | | |
|---|---|---|
| 35 | Big Turkeys | 35 |
| 60 | Fat Chickens | 60 |
| 50 | Guinea Fowls | 50 |
| 8 | Greased Pigs | 8 |

PROGRAMME

Ten Separate Releases of Fowls

Fowls will be released from the tops of buildings in the business district at the following hours:

MORNING

10:00 A. M.—11:00 A. M.—12:00 M.

AFTERNOON

2:00 P. M.—3:00 P. M.—4:00 P. M.—5:00 P. M.

EVENING

7:30 P. M.—8:00 P. M.—9:00 P. M.
Greased Pig Chases will be held in between.

LOUD SPEAKER ·INSTALLATION ON SQUARE

Broadcasting a splendid program of music and entertainment.

COME—BRING THE FAMILY!

Our merchants ask you to spend the day with us, and share our hospitality.

That around said advertisement as aforesaid, appears in type the names of, to wit, 26 merchants and business men of the City of Lewistown aforesaid; that said advertisement was published in divers other newspapers of general circulation published in the county of Fulton and also by printed hand bills containing said advertisement which were circulated throughout the county of Fulton.

That at the time and place aforesaid a crowd of people, to wit, of more than 2,000 persons, assembled in the public square and around the courthouse of the county of Fulton aforesaid, for the purpose of witnessing or participating in said turkey trot, show or exhibition.

And the defendant then and there wilfully and negligently permitted certain streets surrounding the courthouse on the public square at the time and place aforesaid to be roped off or barricaded and then and there at the time and place aforesaid, turkeys were released from the windows of the courthouse of Fulton county in the public square in the City of Lewistown aforesaid, for the entertainment of the crowd that had congregated as aforesaid, or for those of said crowd desiring so to do to capture said turkeys at the time and place aforesaid.

And the plaintiff then and there at the time and place aforesaid while walking along and upon the said street and sidewalk on the north side of the public square in the City of Lewistown, Fulton county, in front of a building owned by one David Sheets and occupied by one James Sorenson, in about the middle of the block on said north side of the public square, being about equal distance between Main street and Adams street, which said streets run north and south in the City of Lewistown aforesaid, and being in the exercise of ordinary care and caution for her own safety, was rushed and pushed by a mob or crowd consisting of, to wit, 300 persons in pursuit of said turkey which had been released from a window in the courthouse in Fulton county in the public square in the City of Lewistown at the time and place aforesaid.

And by reason thereof, while in the exercise of ordinary care and caution for her own safety at the time and place aforesaid, was forced and pushed by said mob or crowd consisting of, to wit, 300 persons, in and through a heavy plate glass window in front of the building occupied by said James Sorenson at the time and place aforesaid.

That by reason thereof she sustained a deep cut upon the left leg, about 10 inches above the knee, severing the tissues, ligaments and muscles of said leg, producing a permanent disability of said leg and causing great pain, anguish and suffering and she became lame, sick, ill and disordered and so remained for a long space of time, to wit, from thence hitherto, during all the time she has suffered great pain and was hindered from transacting her business and affairs. She had laid out divers sums of money endeavoring to be cured.

The second count is in practically the same phraseology as the first count, except in this: That the second count alleges, to wit, yet notwithstanding the defendant having notice or by the exercise of ordinary

care should have had notice of said intended show, exhibition and turkey trot as aforesaid, negligently suffered and permitted a common public nuisance to be perpetrated on the streets and sidewalks of the City of Lewistown at the time and place aforesaid.

All of said counts have allegations of statutory notice of the accident upon appellee, giving the time and place of accident, name and address of attending physician, name and address of the injured, and of leaving a copy of said notice with the mayor and city clerk of the City of Lewistown, a copy of said notices are set out *in haec verba* in each count of said declaration. .

Appellee presented a general demurrer to the declaration, which was sustained, and appellant standing by her declaration, the suit was dismissed and judgment entered against appellant and she brings the record to this court, by appeal, for review.

Whether the declaration states a cause of action is not to be determined by any exact rule heretofore laid down by the courts of this State, and some of the difficulties of the situation were expressed in *Johnston v. City of Chicago,* 258 Ill. 494, 497, where the court said: "The authorities have found it practically impossible to state any rule sufficiently exact to be of much practical value, 'which will precisely embrace torts for which a civil action will lie, in the absence of a statute declaring the liability against a municipal corporation.' (4 Dillon on Mun. Corp.—5th ed.—sec. 1625; 1 Beach on Public Corp. sec. 263.) Indeed, it has been said more than once that all that can be done with safety is to determine each case as it arises. (*Lloyd v. New York,* 5 N. Y. 369; *Cobb v. Dalton,* 53 Ga. 426.) It is frequently stated that to determine whether there is municipal responsibility the inquiry must be whether the particular agents or servants for whose acts of negligence it is sought to hold the corporation are its agents and servants for the performance of a public

duty imposed by law, or merely for the carrying out of private functions which are for its special benefit or advantage. 28 Cyc. 1269, and cases cited; 20 Am. & Eng. Ency. of Law (2d ed.), 1203; Williams on Mun. Liability for Torts, sec. 11.''

The court further held in the *Johnston* case: ''In considering the question of liability the authorities usually hold that it must be considered that a municipality acts in a dual capacity,—first, in exercising its governmental functions; and second, as a private corporation, enjoying powers and privileges conferred for its own benefit. When such municipal corporation is acting within its authority, in a ministerial character, in the management of its property, it is liable for the negligent acts of its employees although the work in which they are engaged will inure to the benefit of the municipality. On the other hand, whether the municipality is exercising judicial, discretionary or legislative authority conferred by its charter, or is discharging a duty imposed solely for the benefit of the public, it incurs no liability for the negligence of its officers. (2 Cooley on Torts,—3d ed.—1014; *City of Chicago v. Seben,* 165 Ill. 371; 20 Am. & Eng. Ency. of Law,— 2d ed.—1197; Tiedeman on Mun. Corp. secs. 338, 349.) The mere fact that a particular work may incidentally benefit the public does not necessarily exempt the city for torts committed by its employees. (20 Am. & Eng. Ency. of Law,—2d ed.—1196.) Official action is judicial where it is the result of judgment or discretion. It is ministerial when it is absolute, certain and imperative, involving merely the execution of a set task, and when the law which imposes it prescribes and defines the time, mode and occasion of its performance with such certainty that nothing remains for judgment or discretion. A municipal corporation acts judicially or exercises discretion when it selects and adopts a plan in the making of public improvements, but as

soon as it begins to carry out that plan it acts ministerially and is bound to see that the work is done in a reasonably safe and skillful manner. *City of Chicago v. Seben, supra;* 4 Dillon on Mun. Corp. (5th ed.) sec. 1741.''

When a city authorizes the occupation of its streets by the temporary structures of a street fair, it is reasonably to be apprehended that unless considerable care is used in their construction some injury may result, and if an injury does result which is the natural consequence of the city's failure to exercise reasonable care to see that the structures were reasonably safe, the city is liable. *Van Cleef v. City of Chicago,* 240 Ill. 318.

In *Van Cleef v. City of Chicago, supra,* the city council, on the application of the business men of the eighth ward, passed a resolution giving permission to use certain streets for a merchants' carnival and street fair to be held for six days, with the necessary shows, stands and attractions. Under that authority the streets named in the resolution were occupied by tents, booths and other structures, and there were three shows in tents erected in the street intersection. Steps to a platform in the street were erected by which Anna Van Cleef, in coming out from one of the shows, was injured. The court held that the occupancy of the street for the carnival and street fair was a public nuisance and that ''the city was guilty of a serious wrong and violation of duty by permitting the occupation of the streets for show purposes and creating a nuisance in them.'' The exact cause of injury in that case was that Anna Van Cleef, from lack of railing or defect of construction, fell from the platform in the street to the ground. The ground of liability in the case, as stated by the court, was: ''We do not regard that as necessary, but as the city had changed the ordinary conditions governing the highway and had actively participated in creating a carnival and street

fair in public streets, we think it assumed the obligation to use reasonable care to see that the structures were reasonably safe."

It is a part of the ministerial duty of a city to keep its streets and sidewalks in a reasonably safe condition for public travel. (*Gathman v. City of Chicago,* 236 Ill. 9; *Lehigh Valley Transp. Co. v. City of Chicago,* 237 Ill. 581, 582.) In the latter case it is held: "Cities have always been held liable in this State for injuries resulting from negligence in the care or management of their streets." *Hogan v. City of Chicago,* 168 Ill. 551, lays down the same rule.

But in the case at bar, appellee did not make itself a party to or promote the nuisance by granting a permit or doing any affirmative act, but is charged merely with wrongfully, unlawfully and negligently permitting divers persons organized as a business men's club, etc., to produce a nuisance upon the streets of Lewistown, etc. There is no question but that the declaration charges negligence, because the court said in the *Van Cleef* case, *supra,* page 325: "When the city authorized showmen to fill its streets with tents and structures of the temporary character usual in carnivals and street fairs, it was reasonably to be apprehended that unless considerable care was exercised injury might result. It was not necessary that the city should have contemplated or been able to anticipate the injurious consequences to the plaintiff or the precise form of her injury, but it is sufficient that the city might have foreseen that some injury might result from its wrongful act, and when the injury did result, it could be seen that it was the natural consequence of the occupation of the street by structures of the nature of this platform under the permission given by the city."

The court in that case further said: "The negligence of the one who constructed the platform would not exempt the city if the permission was also a proximate

cause.'' In the *Van Cleef* case, the appellee was apparently injured by a substantive defect in the sidewalk or street, in and about which the obligations of the city were in its private capacity or ministerial duties.

The law is that police officers, appointed or employed by a city, are not its agents or servants so as to render the city liable in the performance of governmental duties or in executing or enforcing police ordinances or regulations. (*Culver v. City of Streator*, 130 Ill. 238; *Tollefson v. City of Ottawa*, 228 Ill. 136; *City of Chicago v. Williams*, 182 Ill. 135, 139; and *Vossler v. DeSmet*, 204 Ill. App. 292, 296; *Roumbos v. City of Chicago*, 332 Ill. 70.)

In *City of Chicago v. Williams, supra*, the court held: ''In *Craig v. City of Charleston*, 180 Ill. 154, where an officer had been appointed by the city to keep a street free from obstructions, and, while in charge of the street, had made an unjustifiable assault upon plaintiff resulting in serious injury to the latter, it was held that, in such a case, the city is not liable for injuries received, and we there said, that a 'municipal corporation, while simply exercising its police powers, is not responsible for acts of its officers in violation of the laws of the State and in excess of the legal powers of the city.' In the performance of its police regulations a city cannot commit a wrong through its officers in such a way as to render it liable for their torts; where the city is simply exercising its police powers, acts of its officers or agents, which are illegal and unlawful, are ultra vires; and a citizen has no remedy against the corporation for damages caused by such acts of its officers. (*Blake v. City of Pontiac*, 49 Ill. App. 543; *Arms v. City of Knoxville*, 32 Ill. 604.)''

In *Roumbos v. City of Chicago, supra*, the court said: ''A city in the use of the police powers conferred

upon it by the legislature does not act in its private capacity or in the local interest but in the exercise of a governmental function—a part of the political and governmental authority of the State and in the general public interest—and it is therefore not liable for the acts of its officers in the enforcement of police regulations. So it has been held that an incorporated town is not liable for the imprisonment of a person by one of its officers upon a verbal order of a police magistrate for a violation of an ordinance (*Town of Odell v. Schroeder,* 58 Ill. 353;) that a city is not liable for the negligent shooting of a person by a police officer in attempting to enforce an ordinance forbidding the running at large of dogs without being muzzled and providing that all dogs running at large in violation of the ordinance should be destroyed (*Culver v. City of Streator,* 130 Ill. 238;) or for a brutal and unjustifiable assault made by a police officer under pretense of discharging his duty to prevent the obstruction of the streets. *Craig v. City of Charleston,* 180 Ill. 154.''

It is of interest to note that in the last case the city was held liable for the negligence of a street cleaner in setting fire to rubbish and without being watched the flames spread to adjoining premises and caused the death of a child, whose clothing caught fire from the flames. The court held that it was the duty of the city to keep its streets clean, and that the benefit to the public health was a mere incident. This case adopts a more liberal view than the reasoning in the earlier cases would indicate.

In the case at bar, the declaration charges that the proximate cause of the injury was the negligence of the city authorities of appellee. The real injury was the result of, or grew out of, a riot under the Criminal Code or under paragraph 65(59) of Cahill's St. ch. 24, giving city councils power ''To prevent intoxication, fighting, quarreling . . . and all disorderly conduct'';

or under paragraph 65(72), giving city councils power "To prevent and suppress riots, routs, affrays, noises, disturbances, disorderly assemblies in any public or private place."

The declaration charges that the defendant, then and there, wilfully and negligently permitted certain *streets* surrounding the courthouse on the public square, at the time and place aforesaid, to be roped off or barricaded, and that then and there turkeys were released from the windows of the courthouse, etc., for the entertainment of the crowd that had congregated, as aforesaid, or for those of said crowd desiring so to do, to capture said turkeys, at the time and place aforesaid; and the plaintiff, then and there walking along and upon the said street (Sorenson's store), and being in the exercise of due care, was rushed and pushed by a mob or crowd, etc.

As to the "certain streets surrounding the courthouse on the public square," etc., nothing is set out in the declaration as to where these streets were situated that were roped off. Whether they adjoined the public square or lay a mile back is not indicated. "On the public square" only indicates where the courthouse stood. What effect the "roped off streets" had upon the crowds, the turkey or appellant is not made plain or described in the declaration. Whether it accelerated, retarded or had any effect upon the crowd or appellant is not charged in the declaration. Likewise, the declaration does not attempt to indicate where the barricade was or what effect or influence it had, or might have had, upon the crowd or mob or upon appellant, so that this court, under the rule that the pleading of a party is to be construed most strongly against him (*People ex rel. Brinkerhoff v. Swigert*, 107 Ill. 494), cannot find from the declaration that the roping off of streets or barricading streets, or any defect in a street or sidewalk, in any manner contributed to appellant's injury.

But appellant bases her case upon the theory that the carnival or fair was a public nuisance; that appellee negligently permitted it to go along and is therefore liable for any injury. The "permission" as construed in *Arms v. City of Knoxville*, 32 Ill. App. 604; *Wertz v. Mulloy*, 144 Ill. App. 329, 334; *Caspers v. Anglo-American Provision Co.*, 159 Ill. App. 573, 575; *Commonwealth v. Curtis*, 9 Allen (Mass.) 266; and other cases, means,—not to prohibit or prevent; that is, it was simply negligent. A city is not liable for negligently failing to abate every nuisance within its limits.

In *Arms v. City of Knoxville, supra,* the city was held not liable for its police or police officers failing to stop the firing of a cannon, known to be dangerous, upon its streets, which caused the death of plaintiff's intestate; and numerous cases are cited where cities are held not liable for the nonfeasance and misfeasance of its officers or police.

In *Culver v. City of Streator*, 130 Ill. 238, the city was held not liable for personal injury from one of its officers or agents, in enforcing an ordinance prohibiting the running at large of unlicensed dogs.

In *Evans v. City of Kankakee*, 231 Ill. 223, the city was held not liable in the enforcement of police regulations.

In *Roumbos v. City of Chicago, supra,* the court further held: "In this State the care of the streets and sidewalks, their lighting and maintenance, have always been held to be the corporate functions of the municipality, and the municipality has been held liable for the negligence of its employees in the performance of those functions which has resulted in injury to others. There is no difference in kind between these functions and the cleaning of the streets. All are provided for by the same statute in the same terms, and the same rule of liability should apply to all.

"It is argued that the great weight of authority in the decisions of the courts of final jurisdiction in other States is contrary to the conclusion we have reached. We have not overlooked or failed to consider those decisions. Those denying the liability of the city are more numerous than those to the contrary, but in our judgment the view which we have expressed is sustained not only by our own decisions but by the better reason and is more just in its operation than the other view."

The obstruction in the street mentioned in the rule that renders the city liable, relates to a physical defect or obstruction. In *Craig v. City of Charleston,* 180 Ill. 154, 156, the court held: "Appellant further contends that the placing of Apgar in the street and in control of it was the creation of a nuisance, upon which ground it is liable,—in fact, his chief contention is that he became thereby an obstruction in the street,—and cites a long list of authorities in support of the proposition that it is the duty of a city to keep its streets free from obstructions, and a failure in that regard will render it liable for injuries caused thereby. We cannot regard a human being in the exercise of police powers as an obstruction, in the sense contemplated by the unquestioned doctrine announced by those cases."

The whole subject is intelligently discussed in *Hanson v. Berry,* 54 N. D. 487, 47 A. L. R. 816, where the court says: "The rule that subjects a municipality to liability for the failure to maintain its streets in a reasonably safe condition, though generally established and well approved, is nevertheless exceptional and anomalous. 4 Dill. Mun. Corp. 5th ed. sections 1714, 1715. This exception, however, is predicated upon a duty with respect to the physical condition of the streets rather than with respect to the manner in which it shall exercise other governmental powers which may

in turn affect the convenience or safety of those who may have occasion to use the public streets. The failure to arrest pickpockets and gunmen may render the streets as unsafe at night as the violation of an ordinance limiting the speed of automobiles. Yet it is universally held that the city may not be held for the failure to efficiently exercise its powers of government. The failure on the part of the city to abate a nuisance upon private property which affects the safety of travel upon the public streets, such, for instance, as shooting galleries, does not result in liability to one who is injured. *Leonard v. Hornellsville,* 41 App. Div. 106, 58 N. Y. S. 266; *Hubbell v. Viroqua,* 67 Wis. 343, 30 N. W. 847, 58 Am. Rep. 866. To seize upon the exceptional doctrine that holds a city to liability on account of the unsafe condition of the streets as a means of qualifying the rule of nonliability involves a sacrifice of logic to supposed expediency. The obligation that a city owes with respect to the maintenance of its streets in a safe condition does not differ in character or in the consequences of its violation from the numerous other duties it owes to its inhabitants, and the governmental power vested in it for the protection of the public is all to the same purpose, viz., that it shall be used to promote the safety, comfort, and convenience of the citizens. The failure to enforce quarantine regulations may involve the spread of a contagious disease, leaving death in its wake. The sacrifice of life as a result of the failure to exercise this governmental function is as deplorable as though sacrificed under the wheels of a speeding automobile, and there is even more direct causal connection in the former case than the latter because of the independent act of negligence on the part of the driver of the vehicle. In our opinion, a holding that a municipality is liable on account of an unsafe condition of the streets, where such unsafety is due to no physical imperfec-

tion, would involve the modification of well-established principles of law."

If there is to be any liberalizing of the rule in this State from the former and repeated holdings of the courts, it should be done by the court of last resort, and not by the lower courts.

We conclude that the City of Lewistown is not liable for the injuries charged, and the judgment of the circuit court of Fulton county is affirmed.

*Affirmed.*