MARILYN K. KENNELL, Indiv. and as Adm'r of the Estate of Michelle Kay Kennell, *et al.*, Plaintiffs-Appellants, v. CLAYTON TOWNSHIP, Defendant-Appellee (Estate of Chester Gerdes, Defendant).

Fourth District   No. 4—92—0254

Opinion filed December 31, 1992.

William R. Kelly, of Peoria, for appellants.

Jay S. Judge, Kathryn M. James, and Kristine A. Karlin, all of Judge & James, Ltd., of Park Ridge, for appellee.

JUSTICE LUND delivered the opinion of the court:

This is an appeal by plaintiffs Marilyn K. Kennell, individually and as administrator of the estate of Michelle Kay Kennell, and Cheryl A. Pisel and Larry J. Pisel, individually and as administrators of the estate of Cheri Ann Pisel, from an order of the circuit court of Woodford County directing a verdict in favor of defendant Clayton Township (Township) in a wrongful death cause of action based on immunity of the Township under section 2—201 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (Ill. Rev. Stat. 1989, ch. 85, par. 2—201). Defendants originally included the Township road commissioner; however, dismissal occurred upon suggestion on the record of his death.

FACTS

Cheri Ann Pisel and Michelle Kay Kennell, sole occupants of the Pisel family auto, died as a result of a one-car accident which took place at 5:15 p.m. on March 24, 1989. The accident occurred on Clayton Township Road 2400 E and the location of an abandoned rail crossing which crossed the road at a 45-degree angle. While rails had been removed and blacktop substituted, a rise in the road resulting from the rail crossing still existed. Cheri was 16 years of age and a newly licensed driver. Upon motion for directed verdict, the trial court ruled:

"I conclude that, whether what happened here was a decision not to remove this hump in the road after the tracks were removed or whether it was simply the lack of a decision, the function of the road commissioner in determining to do the work or not, or to not even think about it, was a discretionary function, and thus immune from liability under Section 2—201 of the Act."

While defendant emphasizes the distance the auto traveled after loss of control as evidence of excessive speed, we find the trial court's dismissal was based solely on the argument on section 2—201 of the Act. For purposes of this appeal, the question of speed, an issue not determined below by the fact finder, is of no relevance.

Verdicts should be directed only where all the evidence, when viewed in a light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict, based on that evidence,

could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.

LACK OF EVIDENCE OF PROXIMATE CAUSE

While the trial court ruled based upon section 2—201 of the Act and upon the theory of a discretionary decision, after an examination of the trial record, we feel compelled to affirm because of the absence of evidence of proximate cause.

The evidence established that the accident victims were in a motor vehicle, driving north on an oil and chip country road. The driver was young and recently licensed. There was good visibility, and the road was straight without other traffic. Exhibits indicate there was an elevation in the road caused by an abandoned rail crossing. The crossing was at an angle, but photograph exhibits fail to indicate a particularly substantial rise. All warning signs for the crossing had been removed. The rails had been removed, and the surface was blacktopped. There was no expert testimony as to whether the rise was dangerous or any evidence of other accidents at the location of the rise.

There were two eyewitnesses to this accident, a father and son who lived across the road from each other. Their residences were located just north of the elevation where the rail crossing had been. Both men were standing in the son's yard, on the east side of the road. The father, Harold Moritz, testified that he noticed the Pisel car approaching the rise from the south. He watched the car as it crossed the rise and continued on for some distance beyond. He noticed nothing unusual about the car's motion, and he had no opinion as to the speed of the vehicle. When the car was "far beyond" the rise, he turned around to continue attending to his chores. He then heard tires squealing and the car's engine revving. He ran around the barn, and saw dust flying and the tires and hood flying off the car.

Richard Moritz testified that he merely glanced at the Pisel car as it approached the old crossing from the south. He did not watch the car go over the rise. Like his father, he was unable to form an opinion as to speed of the vehicle. He looked up when he heard tires squealing. He saw the Pisel vehicle sliding down the road sideways, then shoot into the ditch and become airborne.

■ The testimony of the Moritzes failed to establish that the rise in the roadway was the cause of the accident. Proximate cause is "any cause which, in natural or probable sequence, produced the injury complained of." (Illinois Pattern Jury Instructions, Civil, No. 15.01 (3d ed. 1992).) Without evidence of proximate cause, liability is

not established. Liability for personal injuries cannot be predicated on mere speculation, conjecture, or surmise, but must be based upon facts established by competent evidence fairly tending to prove it. (*Tompkins v. Twin Oaks Dairy, Inc.* (1968), 91 Ill. App. 2d 88, 94, 234 N.E.2d 403, 406; 28 Ill. L. & Prac. *Negligence* §241, at 213 (1957).) A directed verdict is proper when there is insufficient evidence to create a factual question. (*Derrico v. Clark Equipment Co.* (1980), 91 Ill. App. 3d 4, 9, 413 N.E.2d 1345, 1350.) The evidence failed to establish proximate cause.

## Tort Immunity Act

■■■ Regardless of our finding of absence of sufficient evidence of proximate cause, we consider it beneficial to address the tort immunity issue. The issue involves joint consideration of sections 2–109, 2–201, and 3–102(a) of the Act. Section 2–109 provides: "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." (Ill. Rev. Stat. 1989, ch. 85, par. 2–109.) Section 2–201 provides:

> "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." (Ill. Rev. Stat. 1989, ch. 85, par. 2–201.)

Section 3–102(a) provides:

> "Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." Ill. Rev. Stat. 1989, ch. 85, par. 3–102(a).

The question to be answered is whether section 3–102(a) of the Act imposed a duty upon the Township to remove the rise in the roadway, or whether the decision to do so was one for the road commissioner, thus triggering the immunity of both sections 2–201 and 2–109 of the Act.

■ We first confront plaintiffs' argument that because the road commissioner is no longer a party to this action, the purpose behind section 2—201 of the Act does not exist and section 2—109 of the Act has no effect. No authority is cited for this argument, and we find none. We find the argument spurious, and also find no logic in saying a public entity, otherwise immune, loses that immunity because the employee allegedly performing an act or omission is not made a party defendant or is no longer a party because of death. A contrary decision would lead to circumvention of section 2—109 immunity and section 2—201 immunity benefits, whereby plaintiffs would simply elect not to make the employee a party defendant. If the alleged wrongdoing relates to a discretionary act of an employee, there is immunity for both the employee and the public entity, regardless of whether the employee is a party defendant.

Plaintiffs' second contention is that the duty of local governments codified in section 3—102(a) of the Act cannot be avoided by invoking the immunity provided through section 2—109. This argument misconceives the nature of the relationship between these two sections.

■■ ■ The common law extended immunity to local governmental entities engaged in governmental or discretionary functions, but held them liable for negligence in the performance of ministerial functions. It has been recognized that it is part of the ministerial duty of a municipality to keep its streets and sidewalks in a reasonably safe condition for public travel. (*Blackaby v. City of Lewiston* (1932), 265 Ill. App. 63, 71; *Lehigh Valley Transportation Co. v. City of Chicago* (1908), 237 Ill. 581, 583-84, 86 N.E. 1093, 1093.) Discretionary acts are those which are unique to the particular public office and involve the exercise of judgment. (See *Lusietto v. Kingan* (1969), 107 Ill. App. 2d 239, 244, 246 N.E.2d 24, 27.) On the other hand, ministerial acts are those which are performed in a prescribed manner, in obedience to the mandate of legal authority, without regard to the exercise of discretion as to the propriety of the acts being done. *Larson v. Darnell* (1983), 113 Ill. App. 3d 975, 977, 448 N.E.2d 249, 250-51.

The Act was an effort by the legislature to restore common law municipal immunity abolished by the Illinois Supreme Court in *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 163 N.E.2d 89. Thus, while the Act codifies the common law, it does not create any new duties. *Greeson v. Mackinaw Township* (1990), 207 Ill. App. 3d 193, 203, 565 N.E.2d 695, 701, *appeal denied* (1991), 139 Ill. 2d 595, 575 N.E.2d 914; *Hannon v. Counihan* (1977), 54 Ill. App. 3d 509, 512, 369 N.E.2d 917, 919.

Section 3—102(a) of the Act, therefore, applies only to the performance of ministerial duties. There is absolute immunity in the performance of discretionary functions, as set forth in sections 2—109 and 2—201 of the Act. Contrary to plaintiffs' argument, there is simply no conflict between the provisions of section 3—102(a) and those of sections 2—109 and 2—201 of the Act.

Since there is absolute immunity as to the performance of discretionary or governmental functions, we must decide whether the issue of removal of the rise in the road involved a ministerial act or a discretionary act. We recognize that township road commissioners are not typical employees. They are elected officials and, under section 6—201.8 of the Illinois Highway Code (Code), "[h]ave general charge of the roads of his district, [to] keep the same in repair and to improve them so far as practicable." (Ill. Rev. Stat. 1989, ch. 121, par. 6—201.8.) Their functions are set forth in sections 6—201.1 through 6—201.19 of the Code (Ill. Rev. Stat. 1989, ch. 121, pars. 6—201.1 through 6—201.19). These sections establish the considerable authority and discretion of the commissioner, which include laying out, altering, and widening township roads. Ill. Rev. Stat. 1989, ch. 121, par. 6—201.2.

The amended complaint alleges the Township maintained a hazardous condition on its roadway—a sudden and abrupt hump where railroad tracks had been removed on an otherwise totally flat and level highway. According to plaintiffs, this was a failure to comply with the duty dictated by section 3—102(a) of the Act. Our examination of the evidence confirms that the oil and chip country road involved was straight and unobstructed as to visibility, and it was basically level.

■ We have found no case law, statute, rule, or regulation (nor have plaintiffs cited any) imposing a duty upon a governmental entity or a public official to remove rises in roadways. It is settled law that a township has no common-law duty to widen roads, smooth gravel, erect signs, or mow weeds. A duty only arises when a public improvement is actually undertaken. (*Havens v. Harris Township* (1988), 175 Ill. App. 3d 768, 771, 530 N.E.2d 284, 285; *Bowen v. City of Harvey* (1987), 164 Ill. App. 3d 637, 639, 518 N.E.2d 203, 205.) It must be noted that the Township did not create the allegedly hazardous condition in this case. The rise in the road existed prior to removal of the railroad tracks.

In *Lusietto* (107 Ill. App. 2d at 240-41, 246 N.E.2d at 25), plaintiff's decedent was killed when her car ran off the road after striking a large pothole in a State highway which was under the jurisdiction of

defendant in his capacity as maintenance supervisor. Plaintiff sued, claiming defendant had allowed the pothole to exist in the roadway for a long period of time and had failed to repair it or warn of its existence. Plaintiff prevailed in the trial court, and defendant appealed. The appellate court reversed, holding that defendant owed no duty to plaintiff's decedent individually and, in addition, that defendant's duties were governmental in character and required the exercise of discretion and judgment as to which holes to fill and which would be filled first. Considerations such as available manpower, equipment, and finances limit these decisions. (*Lusietto*, 107 Ill. App. 2d at 244, 246 N.E.2d at 27.) This case illustrates the fact that, depending upon the situation, what might be considered a repair can be a discretionary matter.

The *Havens* case is another example of discretionary action which is immunized by the Act. In that case, plaintiff's minibike collided with a truck on a narrow, twisting, rural, gravel road in defendant township. Plaintiff alleged the width and grade of the road, and failure to mow weeds and have warning signs, combined to make the road unsafe. The trial court dismissed the complaint for failure to state a cause of action. Plaintiff appealed, claiming the township breached its duty to keep the road in a reasonably safe condition, warn of the dangerous condition of the roadway, and mow and trim weeds and brush alongside the roadway. The appellate court affirmed, stating that, absent a statutory or common-law duty, it is in the discretion of the township to decide whether road improvements such as mowing weeds, widening roads, smoothing gravel, and erecting signs are necessary. These are matters of judgment and discretion for which there is absolute immunity under the Act. The court found that to make the road safer under plaintiff's standards, the township would have to change the character of the road itself. This would be an improvement which the township was not bound to do. *Havens*, 175 Ill. App. 3d at 770, 530 N.E.2d at 285.

■ Removing the rise in the roadway in the instant case may fairly be characterized as an improvement, in that its removal would change the character of the road as in *Havens*. It would appear, under existing case law, the removal of the rise would be a discretionary matter for the Township. However, we are not prepared to hold there is never a duty to remove elevations in roadways, no matter how steep or dangerous. After reviewing the evidence in the instant case as to the significance of the rise, we conclude that removal of this particular rise in the road was a discretionary matter with the road commissioner and that the trial court was correct in holding that

there was immunity from liability under sections 2—109 and 2—201 of the Act.

The doctrine holding employees immune from liability when making discretionary decisions was originally termed one of quasi-judicial immunity and rests on the principle that the decision maker, like judges, should be free from liability when making decisions based upon best perceptions of public needs. (*Kelly v. Ogilvie* (1965), 64 Ill. App. 2d 144, 147, 212 N.E.2d 279, 281, *aff'd* (1966), 35 Ill. 2d 297, 220 N.E.2d 174.) Such a doctrine, of course, should not allow a public servant to ignore all dangerous conditions when determining proper maintenance of property available for public use.

The existence of a duty ultimately depends upon choices between competing policies. (*Porter v. City of Urbana* (1980), 88 Ill. App. 3d 443, 445, 410 N.E.2d 610, 612; see also *DiBenedetto v. Flora Township* (1992), 153 Ill. 2d 66 (Miller, C.J., concurring).)

> "In considering whether a duty exists in a particular case, a court must weigh the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against it and the consequences of placing that burden on the defendant." *Gouge v. Central Illinois Public Service Co.* (1991), 144 Ill. 2d 535, 542, 582 N.E.2d 108, 112.

Evidence in this case failed to establish that the elevation in the roadway constituted an unreasonably dangerous condition. The policy underlying the decisions in *Havens, Bowen, Lusietto*, and *DiBenedetto* recognizes the problem of placing the burden of certain road improvements on governmental bodies.

Under the circumstances here, we hold the decision to remove the rise created by the railroad right-of-way was discretionary; thus, the Township had immunity under the Act.

The orders of the trial court granting the Township's motion for directed verdict and denying plaintiffs' motion to reconsider are affirmed.

Affirmed.

STEIGMANN, P.J., and KNECHT, J., concur.