Nos. 
2--00--0615
 & 2--00--0715 cons.

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE PEOPLE 
ex
 
rel
. JOSEPH
  ) Appeal from the Circuit Court

E. BIRKETT,        ) of Du Page County.

Plaintiff-Appellant,
 ) 

) 

v. ) No. 99--L--957

)

THE CITY OF CHICAGO,            )

                                ) 
 Honorable

 
    Defendant-Appellee.   
     ) 
 James W. Jerz,

  ) 
 Judge, Presiding.
 
_______________________________________________________________

THE ROMAN CATHOLIC DIOCESE OF  ) Appeal from the Circuit Court

JOLIET,                 ) of Du Page County.

)

Plaintiff-Appellant,
 ) 

) 

v. ) No. 97--L--1042

)

THE CITY OF CHICAGO,
            ) Honorable

                           )
  Rodney W. Equi and                                              )  James W.
 Jerz,

 
    Defendant-Appellee.
        ) 
 Judges, Presiding.
 

________________________________________________________________

JUSTICE RAPP delivered the opinion of the court:

Plaintiffs, the Roman Catholic Diocese of Joliet (Diocese) and the People of the State of Illinois 
ex
 
rel
. Joseph E. Birkett (the People), separately sued defendant, the City of Chicago (City), for nuisance.  Plaintiffs alleged that aircraft arriving at and departing from the City's O'Hare International Airport generate noise that interferes with the operation of the Diocese's schools.  The trial court dismissed the nuisance counts of plaintiffs' complaints based on the City's immunity under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1--101 (West 1998)).  Plaintiffs' appeals have been consolidated.

I.  FACTS AND PROCEDURAL HISTORY

In a three-count complaint filed against the City on September 25, 1997, the Diocese alleged injury to the operation of Immaculate Conception Elementary School and Immaculate Conception High School, both located in Elmhurst.  The complaint alleged in count I that the noise created by jet aircraft arriving at and departing from the City's O'Hare International Airport constituted a continuing nuisance.  The complaint prayed for a judgment against the City in an amount sufficient to cover the costs of nuisance abatement through soundproofing of the school buildings, a judgment in excess of the cost of nuisance abatement to compensate the Diocese for other nuisance injuries not abated by soundproofing the buildings, and the Diocese's costs of the suit.

The City filed a motion to dismiss the Diocese's complaint alleging, 
inter
 
alia
, that count I should be dismissed pursuant to section 2--619(a)(9) of the Code of Civil Procedure (the Code) (735 ILCS 5/2--619(a)(9) (West 1998)) because the City is immune from tort liability pursuant to the Tort Immunity Act.  Judge Rodney W. Equi considered the parties' briefs and then heard oral argument on the motion to dismiss on October 14, 1998.  Judge Equi dismissed count I with prejudice, finding that the City was immune from liability for the alleged nuisance under the Tort Immunity Act.

On September 8, 1999, the People of the State of Illinois filed a complaint against the City alleging a public nuisance.  The complaint sought a judgment against the City in an amount sufficient to cover the costs of soundproofing the Immaculate Conception school buildings and the People's costs of the suit.

On October 25, 1999, the City filed a motion to dismiss the People's complaint pursuant to section 2--619.1 of the Code (735 ILCS 5/2--619.1 (West 1998)).  The City's motion alleged, 
inter
 
alia
, that the People's complaint should be dismissed pursuant to section 2--619(a)(9) of the Code (735 ILCS 5/2--619(a)(9) (West 1998)) because the City is immune from public nuisance tort liability under the Tort Immunity Act.

On November 10, 1999, the trial court entered an agreed order consolidating the two actions for purposes of conducting discovery and pretrial motions.  On January 20, 2000, the Diocese filed a motion for reconsideration of the October 14, 1998, dismissal of count I.

On March 23, 2000, Judge James W. Jerz heard argument on the City's motion to dismiss the People's complaint and the Diocese's motion for reconsideration.  In a memorandum of decision and order entered on April 28, 2000, the trial court dismissed the People's complaint, finding the City immune from public nuisance tort liability under the Tort Immunity Act.  The trial court held that the City's conduct alleged in the complaint was discretionary in nature within the meaning of sections 2--201 and 2--109 of the Tort Immunity Act (745 ILCS 10/2--201, 2--109 (West 1998)).  In a separate memorandum of decision and order entered on April 28, 2000, the trial court denied the Diocese's motion to reconsider Judge Equi's order dismissing count I of their complaint.  

On May 10, 2000, the Diocese filed a motion seeking a declaration that sections 1--204 and 2--201 of the Immunity Act (745 ILCS 10/1--204, 2--201 (West 1998)) are unconstitutional under the United States Constitution and the Illinois Constitution.  After hearing argument, the trial court denied the Diocese's motion.

On May 30, 2000, the trial court entered an order pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), finding no just reason for delaying enforcement or appeal of the October 14, 1998, and April 28, 2000, orders.  The Diocese and the People timely appeal.

II. DISCUSSION

The Diocese seeks the reversal of the dismissal of its nuisance claim, arguing that (1) there is no local governmental immunity from liability resulting from nuisance; (2) the Tort Immunity Act is unconstitutional; and (3) the trial court erred in dismissing its nuisance claim because there was no showing of a discretionary act.  The People seek the reversal of the order dismissing their nuisance claim, arguing that a claim for nuisance is not subject to the immunity provisions of the Tort Immunity Act.  We begin by noting that the trial court's dismissal of these claims pursuant to section 2--619 of the Code is given 
de
 
novo
 review on appeal.  See 
Provenzale v. Forister
, 318 Ill. App. 3d 869, 874 (2001).

Before 1959, local governmental units in Illinois were immune from tort liability pursuant to the common-law doctrine of sovereign immunity.  However, our Supreme court abolished sovereign immunity in 
Molitor v. Kaneland Community Unit District No. 302
, 18 Ill. 2d 11, 25 (1959).  In response to 
Molitor
, the legislature enacted the Tort Immunity Act, under which local governmental units are liable in tort, but their liability is limited by an extensive list of immunities based on specific governmental functions.  
Burdinie v. Village of Glendale Heights
, 139 Ill. 2d 501, 506 (1990).  Also the 1970 Illinois Constitution abolished sovereign immunity "[e]xcept as the General Assembly may provide by law."  Ill. Const. 1970, art. XIII, §4.

The trial court dismissed plaintiffs' nuisance claims against the City based on the immunity provided in section 2--201 of the Tort Immunity Act, which provides:

"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."  745 ILCS 10/2--201 (West 1998).

In turn, the municipality's immunity is found in section 2--109 of the Tort Immunity Act, which provides:

"A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."  745 ILCS 10/2--109 (West 1998). 

Plaintiffs argue that, because no local governmental immunity from liability for nuisance existed at common law, there was no such immunity created when the legislature enacted the Tort Immunity Act.   Plaintiffs base this argument on authority holding that the Tort Immunity Act codified common-law immunities and did not create new immunities.  See 
Kennell v. Clayton Township
, 239 Ill. App. 3d 634, 639 (1992).

We can dispose of plaintiffs' argument without deciding whether a governmental immunity to liability for nuisance existed at common law.  Our supreme court has recently held that courts must look to the Tort Immunity Act and not the common law to determine whether a governmental immunity exists.  
Village of Bloomingdale v. CDG Enterprises, Inc.
, 196 Ill. 2d 484, 490 (2001).  In discussing the earlier cases of 
In re Chicago Flood Litigation
, 176 Ill. 2d 179 (1997), and 
Barnett v. Zion Park District
, 171 Ill. 2d 378 (1996), the 
Village of Bloomingdale
 opinion stated:

"In 
Chicago Flood
, we based our holding on the same rationale as set forth in 
Barnett
 and reasoned that since the plain language of section 2--201 did not contain the common law exception to immunity for 'willful and wanton misconduct,' the employee, and consequently the City, were immune from liability."  
Village of Bloomingdale
, 196 Ill. 2d at 492.

Village of Bloomingdale
 is controlling in this case.  We must look to the Tort Immunity Act and not the common law for local governmental tort immunity.  
Village of Bloomingdale
, 196 Ill. 2d at 490.  The plain language of section 2--201 does not contain an exception to immunity for nuisance causes of action.  Further, nothing in the language of the Tort Immunity Act codifies a common-law exception to local governmental immunity from liability resulting from nuisance claims.  Accordingly, we hold that the Tort Immunity Act provides the City with immunity from liability for an alleged nuisance in the same manner as it does with other torts.

Next, the Diocese argues that the Tort Immunity Act is unconstitutional because it deprives the Diocese of rights guaranteed by the United States and Illinois Constitutions.  The Diocese points out that section 2--201 creates immunity for injuries arising from discretionary acts of governmental employees that are determinations of policy.  The Diocese argues that, because the definition of "injury" in section 1--204 of the Tort Immunity Act includes "any injury alleged in a civil action, whether based upon the Constitution of the United States or the Constitution of the State of Illinois" (745 ILCS 10/1--204 (West 1998)), the Tort Immunity Act therefore provides local governmental immunity from liability for constitutional causes of action such as those pursuant to article I, section 15, of the Illinois Constitution (Ill. Const. 1970, art. I, §15), which mandates just compensation for the taking and damaging of private property for public use.  Therefore, the Diocese concludes that the Tort Immunity Act is unconstitutional because the legislature cannot, by statute, override rights guaranteed by the constitution and, where a state statute conflicts with the state constitution, the constitution must prevail. 

The Diocese's argument ignores the distinction between a violation of a constitutional right and a tort, and the Tort Immunity Act applies only to tort actions and does not bar actions for constitutional violations.  See 
Firestone v. Fritz
, 119 Ill. App. 3d 685, 689 (1983); 
Streeter v. County of Winnebago
, 44 Ill. App. 3d 392, 394-95 (1976) (drawing a distinction between cases arising under the law of torts and those arising under the Illinois Constitution guaranteeing that private property shall not be taken for public use without just compensation); 
Anderson v. Village of Forest Park
, 238 Ill. App. 3d 83, 92 (1992) (holding that the Tort Immunity Act does not apply to section 1983 claims because of the supremacy clause of the United States Constitution).  Based on the foregoing authorities, we conclude that the Tort Immunity Act does not bar claims for constitutional violations, and therefore we reject the Diocese's argument. 

The Diocese also argues that sections 1--204 and 2--201 of the Tort Immunity Act are unconstitutionally vague and therefore void under the due process clause of the Illinois Constitution and the fourteenth amendment to the United States Constitution.  Specifically, the Diocese argues that section 1--204 does not give the courts any legislative standards for determining which injuries or even which torts are covered by the Tort Immunity Act.  We reject this argument.

A statute is unconstitutionally void for vagueness when people of common intelligence must necessarily guess at its meaning.  
Union National Bank & Trust Co. of Joliet v.  Village of New Lenox
, 152 Ill. App. 3d 919, 922 (1987).  We do not find such vagueness in  sections 1--204 and 2--201 of the Tort Immunity Act.  Although on its face the immunity in section 2--201 would apply to alleged constitutional violations because such violations meet the definition of "injury" in section 1--204, the title of the Tort Immunity Act clearly indicates that it is intended to apply to cases arising under the law of torts (
Streeter
, 44 Ill. App. 3d at  395) and not to claims for constitutional violations.  Accordingly, we affirm the trial court's order denying the Diocese's motion for a declaration that sections 1--204 and 2--201 of the Immunity Act are unconstitutional.

The Diocese's last argument is that the trial court erred in dismissing its nuisance claim because the City did not establish the elements of local governmental discretionary immunity under the Tort Immunity Act.  The Diocese contends that a municipality can establish discretionary immunity under section 2--109 only when there is an identifiable employee who is immune, pursuant to section 2--209, from the liability resulting from an act or omission performed while determining policy and exercising discretion.  The Diocese concludes that, because the City did not identify an employee who exercised discretion and determined policy, thereby causing the Diocese's injury, the trial court's determination that the City had discretionary immunity pursuant to the Tort Immunity Act was error.

In response, the City argues that, when it is clear that the complaint attacks policies adopted through an exercise of governmental discretion, there is no point in requiring a governmental defendant to identify each individual involved in the policy-making process.  The City contends that this is especially true in a case like this, where dozens of officials over many years are responsible for the complex policy judgments and acts of discretion that brought about the existence of the City's O'Hare airport.  We agree with the City.

An immunity afforded to a unit of local government pursuant to the Tort Immunity Act is an affirmative defense.  
Michigan Avenue National Bank v. County of Cook
, 191 Ill. 2d 493, 503 (2000).  It is the defendant's burden to establish every element of its affirmative defense.  
Leaks v. City of Chicago
, 238 Ill. App. 3d 12, 17-18 (1992).  Section 2-201 immunity requires that the plaintiff's injury must result from the public employee's act or omission that was both an exercise of discretion and a policy determination.  
Harinek v. 161 North Clark Street Ltd. Partnership
, 181 Ill. 2d 335, 341 (1998).  "Policy" in this context has been defined as " 'those decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests.' " 
Harinek
, 181 Ill. 2d at 342, quoting 
West v. Kirkham
, 147 Ill. 2d 1, 11 (1992).  "Discretionary" acts are those that are unique to a particular office and involve the exercise of personal deliberation and judgment in deciding whether to perform an act or in what manner the act should be performed.  
Wrobel v. City of Chicago
, 318 Ill. App. 3d 390, 394-95 (2000).

We find no error in the trial court's finding of immunity even where no specific employee of the City was identified as performing an act or omission resulting in plaintiffs' injury.  A municipal corporation can act only through the actions of its agents and officials.  
Bowers v. Du Page County Regional Board of School Trustees District No. 4
, 183 Ill App. 3d 367, 378 (1989).  The nuisance complained of, 
i.e.
, the noise over the Immaculate Conception school buildings in Elmhurst produced by jet aircraft arriving at and departing from O'Hare airport, results from the airport's existence, location, and the manner in which the runways are laid out.  We believe that these three things could only result from acts of discretion by City agents and employees in policy-making positions.

Section 11--102--1 of the Illinois Municipal Code grants municipalities with a population of 500,000 or more the discretion to establish and maintain public airports.  65 ILCS 5/11--102--1 (West 1998).  Section 11--102--2 grants such a municipality the discretion to, 
inter
 
alia
, purchase, construct, reconstruct, expand, and improve landing fields and landing strips.  65 ILCS 5/11--102--2 (West 1998). Finally, section 11--102--5 grants such municipality the power to operate the airport it creates. 65 ILCS 5/11--102--5 (West 1998).  Because the acts resulting in the injury complained of can be done only by agents and employees of the City, we find no error in the trial court's finding of immunity even where no specific employee of the City was identified.  Therefore, we conclude that the trial court properly found that the City's actions in maintaining and operating O'Hare airport were discretionary in nature.  Accordingly, we affirm the dismissal of plaintiffs' claims for nuisance pursuant to section 2--619(a)(9) of the Code.

Having affirmed the dismissal of plaintiffs' nuisance claims, we will address an alternate argument raised by plaintiffs.  Section 2--101 of the Tort Immunity Act states, "Nothing in this Act affects the right to obtain relief other than damages against a local public entity or public employee."  745 ILCS 10/2--101 (West 1998)).  Section 2--101 excludes injunctive remedies from the requirements of the Tort Immunity Act.  
In re Consolidated Objections to Tax Levies of School District No. 205
,, 193 Ill. 2d 490, 501 (2000).  Accordingly, the Tort Immunity Act applies only to tort actions seeking damages against municipalities and not to actions seeking injunctive relief.  See 
Romano v. Village of Glenview
, 277 Ill. App. 3d 406, 410 (1995).

The Diocese and the People argued in the trial court that the relief sought in their complaints was abatement of the nuisance in the form of soundproofing the school buildings, 
i.e.
 an equitable remedy to which the Tort Immunity Act did not apply.  At the end of its nuisance count, the Diocese's complaint specifically prayed for the following relief:

"WHEREFORE, Plaintiff Roman Catholic Diocese of Joliet prays that the Court grant the following relief against the City of Chicago:

A) Enter a judgment against the City of Chicago in excess of Fifty Thousand Dollars ($50,000) sufficient to cover the costs to the Diocese of abatement of aircraft noise and vibrations, by soundproofing of the school buildings.

B) Enter a judgment against the City of Chicago in excess of Fifty Thousand Dollars ($50,000) over and above the soundproofing and related abatement costs, to compensate the Diocese for other nuisance injuries not abated by soundproofing of the buildings.

C) Award the Diocese its costs of suit."

Similarly, the People's complaint specifically prayed for the following relief:

"WHEREFORE, the People pray that the Court grant the following relief against the City of Chicago:

a. Enter a Judgment declaring that the interference with the education of the school children at Immaculate Conception brought about by aircraft noise is a public nuisance;

b. Enter a Judgment against the City of Chicago in excess of Fifty Thousand Dollars ($50,000) sufficient to cover the costs of soundproofing of the school buildings; and 

c. Award the People their costs of suit."

In addressing this argument in its memorandum of decision and order, the trial court stated:

"In my opinion, however, this is still an action for damages, because the complaint requests monetary damages, which, if allowed, will not abate the nuisance of the jet engine noise generally, but may be used to correct and repair non-public property to restore the property and make it more useable for a public purpose. *** Although the State's Attorney's motivation in bringing suit is to benefit the public and the children attending Immaculate Conception Schools[,] the nature of the relief requested still makes this an action for damages subject to the Tort Immunity Act."

The distinction between seeking the remedy of money damages to pay for the abatement of a nuisance and the remedy of an injunction ordering the abatement of a nuisance may be minimal, but the difference between an equitable remedy and a remedy at law is significant for purposes of the Tort Immunity Act.  Therefore, we agree with the trial court's conclusion that the complaints in this case pray for damages and not equitable relief.  Accordingly, as stated above, we affirm the trial court's dismissal of the nuisance claims, as the City is immune from such claims pursuant to the Tort Immunity Act.  However, because plaintiffs allege a continuing nuisance and because we have the discretion pursuant to Supreme Court Rule 366(a)(1) to "exercise all or any of the powers of amendment of the trial court" (155 Ill. 2d R. 366(a)(1)), we modify the trial court's orders dismissing the nuisance claims 
with
 
prejudice
 to 
without
 
prejudice
 to afford plaintiffs the opportunity to pray for equitable relief for the nuisance alleged if they desire. 

IV. CONCLUSION

For the foregoing reasons, we affirm the judgments of the circuit court of Du Page County dismissing plaintiffs' claims for nuisance, but we modify the portion of the orders dismissing plaintiffs' nuisance claims 
with
 
prejudice
 to dismissals 
without
 
prejudice
.  We remand the cause to the trial court for further proceedings consistent with this opinion.

Affirmed as modified; cause remanded.

HUTCHINSON
, P.J., and
 BOWMAN
, J., concur
.