THE PEORIA RAILWAY COMPANY, Appellant, *vs.* THE
PEORIA RAILWAY TERMINAL COMPANY, Appellee.

*Opinion filed October 25, 1911—Rehearing denied Dec. 14, 1911.*

1. MUNICIPAL CORPORATIONS—*privilege to use streets is not al-
ways a mere license.* The privilege to use the streets of a city,
when granted by ordinance, is not always a mere license revocable
at the pleasure of the municipality granting it, for if the grant is
for an adequate consideration and is accepted by the grantee the
ordinance ceases to be a mere license and becomes a valid and
binding contract; and the same result follows where a mere li-
cense is acted upon in a substantial manner before revocation, so
that to revoke it would be inequitable.

2. SAME—*city cannot, after granting portions of street to street
railway, grant same portions to another.* Although a city cannot
grant the exclusive use of its streets to a street railway company,
yet when it has granted the use of certain streets and specified the
portion to be occupied by the street railway company, and the lat-
ter has accepted the grant and constructed its road according to
the grant, the city cannot thereafter, during the continuance of
the contract, grant the same portion of the street to another street
railway company.

3. STREET RAILWAYS—*when a company has the right to exclude
another company from its right of way.* The fact that the city,
when granting street railway privileges, reserves the right to grant
the use of the tracks to any interurban company upon certain con-
ditions specified in the grant, does not give the city the right to
grant the use of the tracks to an interurban company upon differ-
ent conditions, and the street railway company has the right to ex-
clude the interurban company from the use of its tracks and the
space occupied by its cars unless the interurban company complies
with the conditions specified.

4. INJUNCTION—*when street railway company is entitled to re-
lief by injunction.* Where a street railway company has accepted
and is complying with an ordinance authorizing it to lay and use
double tracks, the inside rails of which are laid two feet from the
center of the street, as required by the city, it has a right to en-
join an interurban company from laying its tracks in such street
with the inner rails three feet from the center of the street, there-
by straddling the street railway tracks, even though the interurban
company is acting under the purported authority of an ordinance.

5. SAME—*when a bill for injunction cannot be dismissed.* A
bill for an injunction, even though injunction be the only relief

sought, cannot be dismissed for want of equity upon the application for a temporary injunction unless the issues are joined and the whole case is submitted at that time. (*Field* v. *Village of Western Springs,* 181 Ill. 186, disapproved.)

6. PARTIES—*when city is not a necessary party to bill by street railway company for injunction.* A city is not a necessary party to a bill by a street railway company to enjoin an interurban company from laying its tracks along the street in the portion of the street occupied by the street railway company's tracks, even if the interurban company is acting under the purported authority of an ordinance.

VICKERS, J., dissenting.

APPEAL from the Circuit Court of Peoria county; the Hon. N. E. WORTHINGTON, Judge, presiding.

GRAHAM & GRAHAM, PATTON & PATTON, GEORGE W. BLACK, PINKNEY & McROBERTS, and GEORGE T. PAGE, (GEORGE W. BURTON, of counsel,) for appellant.

JACK, IRWIN, JACK & MILES, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

Appellant, the Peoria Railway Company, filed its bill for injunction in the circuit court of Peoria county against appellee, the Peoria Railway Terminal Company, to restrain appellee from constructing a line of railway on Washington street between Chestnut and Main streets, in the city of Peoria, in accordance with the provisions of an ordinance of the city of Peoria purporting to grant to appellee the right to construct such line of railway.

The bill alleges that in 1904 the Central Railway Company was organized under the laws of this State to operate a street railway in the city of Peoria, and that on December 20, 1904, an ordinance was duly passed by the city council, approved by the mayor and accepted by the Central Railway Company, granting to that company, its successors or assigns, for the period of twenty years, the right to construct, operate and maintain a double-track electric

street railway in certain streets of the city of Peoria, including Washington street from the center line of Chestnut street to the center line of Main street, subject to the provisions, conditions and regulations contained in the ordinance, and also subject to the provisions and regulations of the general ordinances then in force or that might thereafter be adopted by the city, under its police powers, concerning street railways therein. The ordinance contained numerous provisions relating to the construction and operation of the lines of railway, the paving and repair of streets by the railway company, the sale of tickets and issuance of transfers, and the payment of sums of money to the city in lieu of license fees and other charges by the city. It also reserved to the city council the right to grant the privilege of the use of the tracks, wires and power of the railway company to any interurban electric street railway company for the purpose of running its cars from any point at the city limits to any point adjacent to the present location of the Peoria county court house, in the center of the city, provided that such privilege should not be used, when granted, so as to unnecessarily interfere with the traffic and business of the Central Railway Company, and provided further that such privilege should not be used until the interurban company should enter into a contract with the Central Railway Company, the terms and provisions of such contract being specifically set forth in the ordinance and including the following: That such interurban company should furnish to the Central Railway Company a schedule for the regular operation of its cars, which should be maintained and not varied from except for causes beyond the control of the interurban company; that the cars of the interurban company, while upon the tracks of the railway company, should be in charge of a conductor furnished by the railway company; that all passengers on board any car entering upon the tracks of the railway company or boarding the same during its trip over such tracks

should pay a fare in cash or by ticket, and all such fares should be the sole property of the Central Railway Company and should constitute the compensation to be paid by the interurban company to the railway company for the use of its tracks, wires and power; that monthly settlements should be made between the interurban company and the railway company, and all tickets issued by the interurban company and received for fare by the railway company should be paid for or redeemed by the interurban company at the rate of four cents each; that the cars operated upon the tracks of the railway company should not have an over-hang exceeding twenty-two inches outside the gauge-line of the rails of the track upon which such cars are operated, and while on the tracks of the Central Railway Company should be subject to reasonable running rules and regulations established by the latter company. The ordinance also reserved to the city council the right to regulate the speed and schedule time of the running of the company's cars, and to make any reasonable rules, orders and regulations as it might deem necessary to protect the interests, safety, welfare and accommodation of the general public in relation to the operation of the railway, not inconsistent with the provisions of the ordinance. The bill further alleges that by virtue of said ordinance and certain other ordinances the Central Railway Company constructed a double-track railway on Washington street from Chestnut street to Main street, except for about 250 feet near the intersection of Walnut and Washington streets, where only a single track was constructed, and that ever since it and its successors have maintained and operated said railway in connection with a large system of railway tracks owned and controlled by appellant in the city of Peoria; that in compliance with said ordinance appellant constructed on the lower side of Washington street, north of Chestnut street, car barns and repair shops, and constructed from its tracks on Washington street a large number of spur-tracks lead-

ing from its main tracks on Washington street to said car barns and repair shops, covering 150 feet on Washington street; that by an ordinance passed February 20, 1906, amending certain sections of the ordinance of December 20, 1904, the Central Railway Company was granted the right to maintain and operate its railway upon Washington street and other streets for twenty years, and that the ordinance of December 20, 1904, as amended by the ordinance of February 20, 1906, is still in full force and effect, and that appellant and its predecessor have complied with all the terms and provisions thereof. The bill alleges that appellant was on May 9, 1906, organized under the general incorporation laws of Illinois, and on June 20, 1906, acquired by deed and assignment from the Central Railway Company all its railway, including the line on Washington street, and all of its property, real and personal, and also the assignment of all licenses, rights and privileges granted the Central Railway Company by the city of Peoria; that it took possession of said railway thereunder and has ever since operated it in conformity with said ordinances; that many people patronize that part of its railway on Washington street, and that appellant has made arrangements to run cars thereon at intervals of eight minutes during eighteen hours of each day.

The bill further alleges that appellee is a corporation organized under the Railroad act of Illinois to construct and operate a commercial railroad from Peoria to Pekin; that about July 2, 1909, the city council of Peoria adopted an ordinance which purported to grant to appellee, for a period of forty years, the right to construct and operate a double-track railway on Washington street from Kra[?] avenue to Hamilton street, a distance of twenty-[?] blocks, and including that portion of Washington stre[?] tween Chestnut and Main streets occupied by app[?] tracks, the ordinance requiring appellee to lay its[?] on Washington street so that the inner rail of eac[?]

should be three feet distant from the center line of said street. The bill alleges that appellant's tracks are fastened to ties bedded in concrete in Washington street, and that the inner rail of each track is approximately two feet from the center line of the street; that under the pretended rights purported to be granted by the city, appellee has constructed its line of railway from Krause avenue north along Washington street to or near Chestnut street, and is now preparing and threatening to continue construction north along Washington street from Chestnut street in the following manner: By laying the inner rail of each of its tracks about three feet from the center line of the street and the outer rail of each track about seven feet eight and one-half inches from the center of the street, thus bringing the inner rails of appellee's tracks about one foot from the inner rails of appellant's tracks and the outer rails of appellee's tracks about one foot outside the outer rails of appellant's tracks, or, in other words, appellee is preparing and threatening to construct its railway tracks so as to straddle both tracks of appellant upon that part of Washington street between Chestnut and Main streets. The bill then alleges that if appellee is permitted to construct its tracks in the manner described, it will take, damage and destroy appellant's property and seriously interfere with the operation of appellant's railway on Washington street and hinder its cars on that street, and prevent it from maintaining its schedule for the operation of cars, and prevent it from discharging its duties as a carrier, and prevent it from carrying its passengers, as it now does, to various business houses located on and in the vicinity of that part of Washington street, and prevent it from carrying passengers to and from Union depot in Peoria, as it now does, thus depriving appellant of large gains and profits, and break the connection of its system, obstruct and prevent appellant from access to its car barns and repair shops on Washington street, and will bisect appellant's railway system, to

the injury of the public and the great and irreparable injury and damage of appellant; that appellee has no right, under its ordinance, to construct its railway so as to interfere with appellant's rights upon Washington street nor so as to confiscate appellant's property, and that the ordinance under which appellee assumes the right and threatens to lay its tracks as aforesaid, is, as to appellant's rights on Washington street, null and void; that appellant is, and always has been, willing to contract with appellee for the joint use of appellant's tracks and power on Washington street upon the terms specified in the ordinance first above mentioned for the use of such tracks, power and appliances by any interurban electric street railway company whenever appellee shall be so authorized by the city council, but that appellee has failed to comply with the terms of that ordinance and refuses to contract with appellant upon the terms therein specified; that unless appellee is restrained from interfering with the rights of appellant and from laying the rails of its tracks between the tracks of appellant, or from constructing its line so as to interfere with appellant, or from connecting its tracks with the tracks of appellant and running its cars on appellant's tracks, as it threatens and intends to do, great and irreparable injury and damage will accrue to appellant, in this: that appellant's cars will be obstructed, delayed and interfered with, it will be prevented from performing its duty as a carrier of passengers and deprived of large profits, and the lives of its employees and passengers will be endangered.

The bill was filed during the January term of the circuit court and a temporary injunction was issued without notice to appellee, upon condition that the notice should be given as soon as practicable and that a hearing should be had within ten days, and that the injunction should continue in force for and during that time and no longer, unless upon the hearing the court should continue it in force. No hearing was had within ten days, and the matter was

not finally disposed of until about two months after the filing of the bill, during all which time the January term was in session. The notice to appellee was given, and it entered its appearance and filed a sworn answer to the bill. The matter then came on for hearing, at which time the following stipulation was entered into and made a matter of record: "It is agreed and stipulated by the parties hereto, in open court, that the answer filed by the defendant shall be treated as an affidavit on this hearing only upon the question as to whether an injunction shall issue upon the bill filed, and that this hearing shall be for the purpose of determining whether an injunction shall issue upon the bill as filed." The record does not disclose that any motion was made to dissolve the temporary injunction, which was evidently treated by the parties and by the court as still being in full force and effect. Nor does it disclose that any papers were filed in the case aside from the bill and the answer which was stipulated should be treated only as an affidavit for the purposes of the hearing. The hearing resulted in a decree dismissing the bill for want of equity and adjudging the costs against appellant, from which decree an appeal has been prosecuted to this court, and among other grounds for reversal it is urged that the ordinance granting the license to appellee is invalid because it impairs the obligation of the contract between appellant and the city of Peoria, and that the bill discloses a proper case for equitable relief.

The method of procedure adopted by the trial court and by the parties upon the hearing, which resulted in the decree dismissing the bill, is unusual. While an answer had been interposed by appellee, by the stipulation of the parties (and the decree of the court shows that the hearing was had upon that stipulation) it was agreed that it should not be treated as an answer but should be treated only as an affidavit in determining the sufficiency of the bill. While we find in the record no motion to dissolve the in-

junction and dismiss the bill, the hearing was in the nature of one on such a motion. The answer having been stipulated out of the record for the purposes of that hearing, there was no place in the record for an affidavit, as an affidavit on motion to dissolve an injunction can only be considered after answer is filed. The whole proceeding is one in the nature of a demurrer to the bill for want of equity, and will be so reviewed by us. This leaves, then, as the only question to be determined, Was the bill destitute of equity on its face?

By the ordinance of December 20, 1904, the Central Railway Company was granted a license to construct and operate a street railway in the city of Peoria, and as a part of the system it was authorized to construct a double track on Washington street from Chestnut to Main. The Central Railway Company accepted the provisions of this ordinance, constructed its railway in the city of Peoria, a part of the same being a double-track railway on that part of Washington street involved here. By the acceptance of this ordinance and the construction and operation of its street railway the ordinance then became a valid and binding contract between the street railway company and the city. The privilege to use the public streets of a city or town, when granted by ordinance, is not always a mere license revocable at the pleasure of the municipality granting it, for if the grant is for an adequate consideration and is accepted by the grantee, then the ordinance ceases to be a mere license and becomes a valid and binding contract; and the same result is reached where, in case of a mere license, it is, prior to its revocation, acted upon in some substantial manner so that to revoke it would be inequitable and unjust. *Chicago Municipal Gas Light Co.* v. *Town of Lake,* 130 Ill. 42; *City of Belleville* v. *Citizens' Horse Railway Co.* 152 id. 171; *People* v. *Blocki,* 203 id. 363; *City of Chicago* v. *Chicago and Oak Park Elevated Railroad Co.* 250 id. 486.

ᴈ 5 2 — 6

Appellant, as assignee of the Central Railway Company, succeeded to its rights and privileges and became entitled to the enjoyment of all the provisions of the contract between the Central Railway Company and the city. By the ordinance granting the license to the Central Railway Company it was provided that the tracks should be laid in the various streets over which permission was given to operate the railway, under the direction of the commissioner of public works. The bill alleges that on that portion of Washington street involved here, where appellant has constructed and is using a double track, the tracks are so laid that the inner rail of each is distant about two feet from the center line of the street, and the bill alleges that these tracks were so laid under the provisions of that ordinance. By the ordinance granting to appellee a license to use this portion of Washington street it is provided that its double tracks shall be so laid that the inner rails shall each be three feet distant from the center line of the street, thus giving the appellee permission to use the same portion of Washington street now being used by the appellant between Chestnut and Main, which would necessarily result in appellee being given permission to occupy the same space along that street with its cars, with its road-bed construction and with its overhead equipment as had theretofore been granted to appellant for its use.

Appellee seeks to sustain the right of the city to grant this license upon the ground that the city has no power to grant an exclusive franchise to a private corporation to use its streets for the purpose of conducting and maintaining a street railway system, and that a grant to a corporation to use its streets for the purpose of conducting and maintaining a street railway system cannot be such an exclusive grant as to prevent the city from granting to another corporation the privilege to occupy its streets for the same purpose. No question is better settled in this State than that a city may not give to a street railway company the

exclusive right to occupy and use its streets for street railway purposes. The power to regulate and control the streets of municipalities in this State is delegated by statute to the municipal authorities. Under the powers conferred upon the municipal authorities they may grant to a street railway company the use of the streets of the municipality for street railway purposes, and may designate and prescribe the particular streets upon which the railway may be constructed and maintained and the particular parts of each street upon which the tracks shall be laid. While a city does not have the right to grant the exclusive use of its streets to one company for the operation of a street railway, having granted a particular company that right and having designated the particular streets which it may use and occupy with its railway system, and the grant having been accepted and acted upon, the city cannot thereafter, and during the term of the contract thus entered into, grant to another street railway company the identical portions of the streets which it has theretofore granted to the first company. A city may grant the right to a second company to construct and operate a street railway system over and upon its streets provided the same can be done without necessarily appropriating that portion of the streets which has been granted to the first company and which is being used by it in the operation of its railway system. While a street railway company cannot, by ordinance, be given the exclusive right to the use of the streets of the municipality, when it is granted the right to construct and maintain a street railway system for a definite period it is thereby given the exclusive right to that portion of the streets granted to it for use for street railway purposes during the time of the grant, and during that time has the right to exclude other street railway companies from the use of its tracks and the space occupied by its cars. *Barsaloux* v. *City of Chicago,* 245 Ill. 598; *Hamilton Traction Co.* v. *Ham-*

*ilton Electric Transit Co.* 69 Ohio St. 402; *City Railway Co.* v. *Citizens' Street Railroad Co.* 166 U. S. 557.

It is urged that the city is only exercising the right which it reserved in the ordinance of December 20, 1904, in granting the right to appellee to use the tracks of appellant on Washington street. It is not pretended, however, that the city is exercising that right in the manner designated in the reservation of that ordinance. The fact that the city in that ordinance reserved the right, under certain conditions, to grant any interurban company the privilege of using the tracks and the motor power of appellant does not authorize the city to grant another company the right to use that portion of the street theretofore granted appellant's assignor and under entirely different conditions from those reserved in the original ordinance. As the city has not attempted to comply with the reservations contained in the first ordinance, the conditions of that ordinance relating to the right to grant permission to an interurban company to use the tracks and motor power of appellant have no bearing whatever upon the facts involved here, and the questions at issue here must be determined just as though no such reservation was contained in that ordinance.

Appellee contends that the city of Peoria is a necessary party defendant, and that the bill was properly dismissed for that reason. The city has no such interest in the matters involved as to render it a necessary party.

Under the allegations of the bill the ordinance of December 20, 1904, constitutes a contract binding and obligatory between appellant and the city, which cannot be arbitrarily revoked or broken. The ordinance to appellee impairs the obligation of that contract and is void as to appellant. The bill discloses a clear right to injunctive relief, and the court erred in dismissing the bill for want of equity.

The decree of the circuit court is reversed and the cause remanded to that court for further proceedings not incon-

sistent with the views herein expressed, and with directions to continue in force the temporary injunction until the final disposition of the cause.

*Reversed and remanded, with directions.*

Mr. JUSTICE VICKERS, dissenting.

Subsequently, upon considering the petition for rehearing in this case, the following additional opinion was delivered:

Per CURIAM: Appellee presents its petition for rehearing, wherein it is represented that we have misapprehended the issues presented to the chancellor and the effect of the decree. It is pointed out that we have misconceived the object, purpose and extent of the original restraining order,—that it was simply a stay order for ten days, which was dissolved automatically at the expiration of that time. While no hearing was had within the ten days, as was provided by the order, the notice required was given to the defendant and the hearing was had as soon as the matter could be considered by the court, and, as stated in the original opinion, it is apparent that the parties and the court all treated the injunction as remaining in full force and effect.

It is contended that the hearing was had upon an application for a temporary injunction, at which time the bill and the answer, treated as an affidavit, were considered. That the chancellor did not regard the proceeding as an application for a temporary injunction is evident from the fact that the hearing resulted in an involuntary dismissal of the bill. A bill, even though injunction be the only relief sought, cannot be dismissed for want of equity upon an application for a temporary injunction unless the issues are joined and the whole case is submitted at that time. In *Field* v. *Village of Western Springs,* 181 Ill. 186, we held this could be done, but we do not regard it as the

proper practice, and that case will not be followed in that particular.

Appellee contends that the chancellor decided the matters here involved upon the merits from the facts as presented by the bill and affidavit, and that the case should be disposed of here upon its merits. There was no answer, as such, on file, it having been stipulated that the answer be treated as an affidavit only for the purposes of the hearing. The whole case was not presented to the court and the hearing was not upon the merits. Upon a consideration of the whole record we adhere to our view that the hearing was in the nature of one on a motion to dissolve the injunction theretofore issued. In its petition for rehearing appellee concedes that the bill, on its face, is not obnoxious to a general demurrer for want of equity. That being true, appellant is entitled to a hearing upon the merits.

We perceive no reason why the original opinion should be changed or modified in any way, and the rehearing is therefore denied.

*Rehearing denied.*