FIRST DIVISION

November 12, 2002

No. 1-00-4149

CHICAGO LIMOUSINE SERVICE, INC., ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

v. ) 

) No. 97 CH 12428

THE CITY OF CHICAGO, a Municipal ) 

Corporation, and CAROLINE O. )

SCHOENBERGER, Commissioner of the )

Department of Consumer Services, ) Honorable

) Paul P. Biebel,

Defendants-Appellees. ) Judge Presiding.

JUSTICE GORDON delivered the opinion of the court:

The instant cause of action stems from a complaint filed by Chicago Limousine Services, Inc. (plaintiff), against the City of Chicago (defendant) related to livery licenses issued by defendant from 1987 through the pendency of this suit.  In the complaint, which had six counts, plaintiff alleged that: (1) livery licenses issued by defendant after April 1, 1987, were unlawful in that they exceeded the statutory limit and were issued without a public hearing where it was determined that public convenience and necessity warranted their issuance; (2) the licenses should be declared null and void; (3) defendant breached a contract with plaintiff when issuing the additional licenses; (4) even if a contract was not in effect, plaintiff substantially relied on defendant's representations concerning the number of licenses that could lawfully be issued, and therefore, the issuance of additional licenses was inequitable and unjust; (5) plaintiff has vested property rights in its livery licenses and the issuance of additional licenses violated plaintiff's constitutional rights without due process of law or just compensation; and (6) plaintiff's contractual right to a fixed amount of livery licenses was unconstitutionally impaired by defendant's failure to conduct a public hearing regarding the issuance of additional licenses.  Although the complaint alleged six counts of wrongdoing on the part of defendant, plaintiff only appeals the dismissal of counts III and IV in this appeal, which related to contract breach and promissory estoppel, respectively.  Plaintiff now asserts that counts III and IV were improperly dismissed because both alleged viable causes of action.  For the foregoing reasons, we affirm the judgment of the trial court.

BACKGROUND

The facts of this case are largely undisputed.  In 1951, the City passed the public passenger vehicle ordinance (the ordinance or livery ordinance), which set forth procedures for issuing livery licenses in the City of Chicago and limited the number of licenses available for issuance to 370.  The ordinance provided that additional licenses would not be issued "unless, after public hearing, the council [Chicago city council], by ordinance, shall determine that public convenience and necessity require additional service." Chicago Municipal Ordinance §
 28-8 (December 20, 1951).
(footnote: 1) 

The livery ordinance in question was amended at least six times from its inception in 1951 until 1988, when the cap on the amount of livery licenses authorized for issuance was lifted.  In 1952, it was changed to give the commissioner of public vehicle licensing, rather than the city council, the authority to determine whether public convenience and necessity would require additional licensing.  Chicago Municipal Ordinance § 28-19 (amended January 30, 1952).  Thereafter, in 1959, the ordinance was changed to adopt standards set forth in section 28-22.1 for public convenience and necessity hearings conducted to increase limits on taxicab licenses.  Section 28-22.1 provided procedural guidelines related to notice of hearing and witness testimony and listed the considerations necessary to make a convenience and necessity determination. Chicago Municipal Ordinance § 28-19, 28-22.1 (amended August 24, 1959).

In 1963, section 28-22.1 of the ordinance, which now set forth the guidelines for conducting a public necessity and convenience hearing for both taxicab and livery licenses, was altered.  The new version of section 28-22.1 required licensees to submit "a sworn statement of all gross fares collected and of all operating expenses" for a period of 12 months prior to the hearing.  Chicago Municipal Ordinance § 28-22.1 (amended July 1, 1963).  Whereas licensees were previously given the right to call witnesses and to be "heard", they were now given the explicit right to cross-examine witnesses and introduce evidence.  Further, mathematical equations were set forth for calculation of the amount of licenses that could be authorized at any given time.  In addition, section 28-33 of the ordinance provided that the provisions of the ordinance would not be changed for a period of five years. Chicago Municipal Ordinance § 28-22.1, 28-33 (amended July 1, 1963).  

At the end of the five-year period, in 1968, the ordinance was reinstated without significant change for an additional five years. Chicago Municipal Ordinance § 28-33 (December 30, 1968).  The facts presented by the parties indicate that plaintiff entered the livery business during the pendency of this five-year period and purchased six livery licenses in 1970.

In 1979, the ordinance was again amended.  In this version, section 28-22.1, which governed the public necessity and convenience determination, provided that the commission was given the authority to override the previously implemented mathematic formula used to determine appropriate increases in livery licenses in the event that it determined that "public convenience and necessity will be served thereby."  Chicago Municipal Ordinance § 28-22.1 (amended September 26, 1979).

In 1986, plaintiff purchased another limousine company and acquired additional licenses for a total of 31.  The following year, the city council passed a further amendment that eliminated the need for a finding of public necessity and convenience as a precondition for issuing additional livery licenses.  In fact, the standards previously articulated to aid in making this finding were deleted from the ordinance.  The ordinance simply stated that the committee could, "from time to time conduct hearings to determine whether there should be additional taxicab or livery service."  Aside from notice requirements, no further guidelines regarding these hearings were made part of the ordinance.  Chicago Municipal Ordinance
 § 28-22.1 (amended April 1, 1987).

In 1988, the city council adopted another amendment, which provided for an incremental increase in the amount of livery licenses issued each year through 1992, with no cap on the number of licenses issued beyond that time.  This amendment was adopted without a public hearing.  Further, as a result of the amendment, hearings were no longer required to increase the number of livery licenses available for issuance.  Chicago Municipal Code § 28-19 (amended January 27, 1988).

Plaintiff filed the instant six-count complaint in 1997, some nine years after the ordinance was last amended in 1988 to raise the limit of livery licenses that could be issued.  The complaint alleged that the additional licenses provided under the 1988 amendment triggered the six causes of action alleged in the complaint, which included unlawful issuance of additional licenses, contract breach, promissory estoppel and the violation of vested constitutional rights in property and contract.  Defendant filed a motion to dismiss the complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2000)).  After extensive briefing and a hearing on the motion, the trial court ruled in favor of defendant and dismissed all counts of the complaint.  Counts III and IV, the subjects of the instant appeal, were dismissed pursuant to a finding that the ordinance was part of a general regulatory scheme and could not be construed as a contract, and on the basis that public policy is unfavorable to the concept of estoppel as it applies to governmental agencies and is only allowed in rare circumstances not present in the case at bar. 

ANALYSIS

Before addressing the substantive merits of plaintiff's appeal, we first consider defendant's contention that plaintiff's claims are barred because they were not brought within the one-year statute of limitations for civil actions filed against government entities under the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/8-101 (2000)).  The Act provides:

"No civil action may be commenced in any court

against a local entity or any of its employees

for any injury unless it is commenced within 

one year from the date that the injury was 

received or the cause of action accrued.  For

purposes of this Article, the term 'civil action'

includes any action, whether based upon the common

law or statutes or Constitution of this State."  745 ILCS 10/8 101 (West 2000).

Although this section of the statute refers to "any" civil action, this court has held that section 8-101 does not apply to contract claims. 
Dewitt v. McHenry County
, 294 Ill. App. 3d 712, 717, 691 N.E. 2d 388, 392 (1998).  Application of section 8-101 was further clarified in 
Roark v. Macoupin Creek Drainage District
, 316 Ill. App. 3d 835, 846, 738 N.E. 2d 574, 584 (2000), where we stated that section 8-101 "is narrow, applying only to tort actions."   Accordingly, plaintiff's claim is not barred on this ground.

Contract Claim

Turning to the substantive merits of plaintiff's contract claim, a section 2-615 motion, pursuant to which this case was dismissed, attacks the legal sufficiency of a complaint and should be granted only in those situations where the allegations of the complaint, viewed in a light most favorable to the plaintiff, are insufficient to state a cause of action upon which relief can be granted.  
La Salle National Bank v. City Suites, Inc.
, 325 Ill. App. 3d 780, 790, 758 N.E. 2d 382, 390 (2001).  In considering the trial court's judgment, this court accepts all well-pled facts and the reasonable inferences to be drawn therefrom as true.  
Bryson v. News America Publications, Inc.
, 174 Ill. 2d 77, 86-87, 672 N.E. 2d 1207, 1214 (1996).  A cause of action will not be dismissed on the pleadings unless it is apparent that no set of facts could be proved which will entitle the plaintiff to recover.
  
Bryson
, 174 Ill. 2d at 86-87, 672 N.E. 2d at 1213-14.  The dismissal of a complaint pursuant to a section 2-615 order is subject to 
de
 
novo
 review.  
Neppl v. Murphy
, 316 Ill. App.3d 581, 583, 736 N.E. 2d 1174, 1178 (2000).

Plaintiff first contends that the trial court erred in dismissing count III of its complaint because the livery ordinance in question created a valid and binding contract between defendant and plaintiff, and that defendant breached the contract when it issued additional licenses without conducting a public hearing.  Defendant counters that no such contract existed because ordinances are generally not construed as contracts unless an explicit, bargained-for exchange of value occurs.  The initial question before this court is whether a contract was actually formed in this case.  We answer that question in the negative.

It is well established that a contract forms when there has been an offer, acceptance of that offer, and consideration.  
Estate of Chosnyka v. Meyer
, 223 Ill. App. 3d 493, 495, 585 N.E. 2d 204, 206 (1992).  Plaintiff asserts that each of the elements of contract formation was met in this case.  Plaintiff argues that the ordinance constitutes an unilateral offer that plaintiff accepted by "obtaining livery licenses***  its [plaintiffs] annual applications for their renewal and its submission to the City of requests to transfer to its name title to those licenses it has acquired from others."  Further, plaintiff argues that it "provided consideration to the City by paying annual license fees imposed by the City, purchasing and maintaining livery vehicles and other equipment and required insurance, hiring the employees necessary to operate its livery business, providing the livery service demanded by the residents of the City, and abiding by the City's regulatory ordinances while it provided that service."

When determining whether an ordinance or statute creates a contract, it is well settled:

"' [T]he presumption is that"a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." A party who asserts that a State law creates contractual rights has the burden of overcoming the presumption that a contract does not arise out of a legislative enactment." 
Fumarolo v. Chicago Board of Education
, 142 Ill. 2d 54, 104, 566 N.E. 2d 1283, 1305 (1990), quoting 
National R.R.Passenger Corp. v. Atchison, Topeka & Santa Fe Railway Co.
, 470 U.S. 451, 466, 84 L.Ed. 2d 432, 446, 105 S.Ct. 1441, 1451 (1985), quoting 
Dodge v. Board of Education
 302 U.S. 74, 79, 82L. 57, 61, 58 S. Ct. 98, 100 (1937)..

Further, "[i]n determining whether a statute was intended to create a contractual relationship between the State and affected party, the court must examine the language of the statute."  
Fumarlo
, 142 Ill. 2d at 104, 566 N.E. 2d at 1305.  Whether the statute intended to create contractual rights largely depends upon the language used.  
In re Application of Skidmore
, 75 Ill. 2d 33, 38, 387 N.E. 2d 290, 292 (1979). 

The court must also be mindful 
"The privilege to use the public streets of a city or town, when granted by ordinance, is not always a mere license revocable at the pleasure of the municipality granting it, for if the grant is for an adequate consideration and is accepted by the grantee, then the ordinance ceases to be a mere license, and becomes a valid and binding contract."  
Peoria Ry.Co. v. Peoria Ry. Terminal Co.
, 252 Ill. 73, 81, 96 N.E. 689, 692 (1911);

See also 
Yellow Cab Co.
 
v. City of Chicago
, 396 Ill. 388, 402, 71 N.E. 2d 652, 659 (1947).  

In this case, plaintiff relies heavily on the courts' determinations in 
Peoria Ry.
 and 
Yellow Cab
 to support its contention that a valid and binding contract was formed between it and defendant.  However, those cases are inapposite to the case at bar.  In 
Peoria Ry.
, an ordinance was passed by the Peoria city council authorizing and naming the plaintiff's predecessor, Central Railway Company (Central), and its successors and assigns, to construct and operate a street railway line in certain areas of the city.  The right to operate was granted for a period of 20 years.  The plaintiff acquired Central through purchase.  As the undisputed successor and assignee, the plaintiff was the only street railway company authorized and designated by the ordinance to perform this service.  A dispute subsequently arose between the plaintiff and the defendant when the defendant attempted to lay rail tracks in an area overlapping with the plaintiff's designated track route, an act which the plaintiff alleged would severely hinder its business operations.  Our supreme court enjoined the defendants from building the additional rail tracks after concluding that the ordinance granted the plaintiff the exclusive authority to build and use the railway system, thus creating a valid and binding contract that could not be arbitrarily revoked.  
Peoria Ry.
, 252 Ill. at 84, 96 N.E. at 693. 

The instant case differs substantially from 
Peoria Ry
. Here, plaintiff's complaint does not allege that it was the sole livery operator commissioned by the city to create a livery service in Chicago, nor was it organized under the laws of this state to operate a livery business at the defendant's request.  Further, plaintiff was not promised that it would be in sole possession of the licenses on an exclusive basis
. Rather, in this case, defendant provided an opportunity for any qualified applicant to obtain a limited number of livery licenses and plaintiff took advantage of that opportunity by creating and maintaining a livery business.  Plaintiff was not the only company given this opportunity, and, as the record demonstrates, plaintiff did not take advantage of the opportunity until 1970, some 19 years after the opportunity to obtain those limited licenses was made available.  Further, when plaintiff obtained 6 of its 31 licenses in 1970, it did so with the understanding that the ordinance, as it was written, would be in effect for a period of three more years, which is substantially less than the 20 years provided by the ordinance in 
Peoria Ry
.  Although plaintiff contends that it accepted defendant's offer by expending its capital to create, operate and maintain a livery business, its investment obviously cannot compare to the investment of capital and resources expended by 
Peoria Ry.
 to construct, create and operate an entire street railway line for which it was promised a monopoly for two decades.

Yellow Cab
, the other case relied upon by plaintiff, is likewise inapplicable on its facts.  There, the city passed an ordinance that promised a preference to cab licensees who were willing to turn in a portion of their current cab licenses with the promise that they would be first to obtain additional licenses at a later time.  The ordinance was passed in 1937 to accommodate the attrition of the use of cabs during World War II, after unprofitable cab operations resulted in strikes and other violence on the city streets.  
Yellow Cab
, 396 Ill. at 391, 71 N.E. 2d at 654.  Pursuant thereto, the plaintiff surrendered a substantial number of its licenses to the city.  However, when the war ended and the city determined that these licenses could be reissued, the city threatened to deprive the plaintiff of the preference it believed would be forthcoming under the ordinance on the grounds that it did not have enough cabs ready for service.  
Yellow Cab
, 396 Ill. at 393, 71 N.E. 2d at 655.  Relying on the holding in 
Peoria Ry.
, our supreme court held that the ordinance constituted an offer that was accepted by the plaintiff and was based upon valuable consideration and, therefore, constituted a valid and binding contract.  
Yellow Cab
, 396 Ill. at 400-02, 71 N.E. 2d at 658-59.

Yellow Cab
 is inapposite to the case at bar because there, the plaintiff, which owned more than half of the licenses in existence, surrendered to the city its rights to specific assets which were central to its business, namely, its taxicab medallions.  This surrender was based on the strength of the city's assurance in its ordinance that those who gave up their current medallions would specifically receive future preferences in exchange.  
The city, in effect, made a direct offer to each cab licensee that voluntarily surrendered its medallions directly to the city on the strength of the city's promise to each surrendering entity.

Conversely, in this case, the ordinance did not call for or elicit from any party any surrender of its property to the city.  The expenditures by the plaintiff were merely expenditures of investment capital by a business entity to purchase assets for its own use on the strength of an ordinance generally directed to the public at large.  Plaintiff, here, was one of several livery services that obtained livery licenses in accordance with a city ordinance that made 370 of these licenses available. 
 Plaintiff's complaint does not allege that it gave up anything to defendant in exchange for these livery licenses, other than a license fee paid on a per-license basis.  At best, the position of plaintiff, in relying on a condition created under an ordinance in investing and developing its business, was a position that it shared with any other livery service created, maintained or expanded at that time.  In that regard, plaintiff's complaint does not allege, nor can it, that defendant made any direct promise to it or to any other livery operators to so limit the number of licenses, or the manner by which they could be issued, in exchange for their investment efforts.  In construing an ordinance, we are mindful that a municipality cannot be held hostage to an ordinance so as to preclude it against future modification or repeal because of anticipated reliance, when the ordinance itself does not preclude such modification or repeal.  See 
Aurora National Bank of Aurora v. City of Aurora
, 82 Ill. App. 3d 72, 76, 402 N.E. 2d 365, 368 (1980) (where the plaintiff's contention that an ordinance should be enacted for the performance of administrative business in a municipality failed based on the court's determination that such action "would place an intolerable burden on the operations of municipal government without any corresponding benefit"). 

As pointed out, the city did not direct the ordinance, as it did in 
Peoria Ry.
, to one particular company or organization.  Nor, as noted, does the ordinance request, as it did in 
Yellow Cab
, that those obtaining livery licenses surrender anything in exchange to defendant.  Lastly, in adhering to the analysis set forth by our supreme court in 
Fumarolo
 with respect to determining whether a contract is properly derived from a statute, we note that the ordinance in this case did not purport to use the term "contract", nor did it use language that could be construed as being couched in contract terms.  See 
Fumarolo
, 142 Ill. 2d at 104, 566 N.E. 2d at 1305 ("[i]n determining whether a statute was intended to create a contractual relationship between the State and the affected party, the court must examine the language of the statute"). 
 Thus, after viewing the allegations of the complaint in a light most favorable to plaintiff, we conclude that the allegations are insufficient to state a cause of action upon which relief can be granted in this case.  Having reached this conclusion, we need not address plaintiff's contentions concerning the alleged contract breach.

Substantial Reliance/Promissory Estoppel Claim

Next, plaintiff contends that, even if a contract did not exist in this case, a viable cause of action exists against defendant based on a theory of promissory estoppel.  Defendant counters that plaintiff is barred from raising this claim under the statute of limitations set forth in section 13-205 of the Code, which provides that civil actions not commenced on the basis of unwritten contracts or damages from injury done to property "shall be commenced within 5 years next after the cause of action accrued."  735 ILCS 5/13-205 (West 2000).  Plaintiff responds that the statute of limitations cannot apply because, although the ordinance was changed to expand the number of licenses available in 1988, the issuance of each new license until the present time constitutes a separate cause of action.  We need not, however, make a final determination on this procedural issue because we find that plaintiff's claim fails on the merits.

Plaintiff argues that it relied upon the ordinance in so substantial a manner that it would be "inequitable and unjust" to allow the value of its licenses to be destroyed by defendant's decision to increase the number of licenses issued.  In response, defendant argues that plaintiff's claim fails because the elements of promissory estoppel were not properly alleged in the complaint.  

To sustain a claim of promissory estoppel, the plaintiff must show that: (1) an unambiguous promise was made, (2) the plaintiff relied on the promise, (3) the plaintiff's reliance on the promise was reasonable, and (4) the plaintiff suffered a detriment. 
Pickus Construction & Equipment v. American Overhead Door
, 326 Ill. App. 3d 518, 523, 761 N.E. 2d 356, 361 (2001). A determination of whether detrimental reliance has occurred is based on the individual facts of each case. 
Parkside Senior Services, L.L.C. v. National Development & Consultants, Ltd.
, 303 Ill. App. 3d 1022, 1026, 709 N.E. 2d 605, 608 (1999).  It is well settled that "[t]he legislature has an ongoing right to amend a statute" and that "there is no vested right in the mere continuance of a law."  
Panzella v. River Trails School District 26
, 313 Ill. App. 3d 527, 534, 729 N.E. 2d 954, 960 (2000).  Likewise, "[e]stoppel against public bodies is generally not favored and is allowed in only rare and unusual circumstances. [Citations.]  *** The doctrine of estoppel is invoked against a public body only when it is necessary to prevent fraud and injustice."  
Halleck v. County of Cook
, 264 Ill. App. 3d 887, 893, 637 N.E. 2d 1110, 1114 (1994). 

The parties agree that plaintiff pled sufficient facts alleging that it relied on the livery licensing ordinance by creating, maintaining and operating a livery service and that it suffered a financial detriment as a result of the issuance of additional livery licenses.  However, defendant contends that plaintiff did not allege sufficient facts to show that its reliance was the product of an unambiguous promise by defendant not to alter the method of increasing the amount of livery licenses available in the City of Chicago.  Defendant further argues that plaintiff failed to allege that its reliance on this alleged promise was reasonable.  We agree.  

To support its assertion that the ordinance constituted an unambiguous promise, plaintiff again relies on the 
Peoria Ry.
 case.  In 
Peoria Ry.
, our supreme court stated that an ordinance becomes binding where, "in case of a mere license, it is, prior to its revocation, acted upon in some substantial manner, so that to revoke it would be inequitable and unjust."  
Peoria Ry.
, 252 Ill. at 81, 96 N.E. at 692.  As previously noted, in that case, the plaintiff acted upon the city's promise that it could operate a street railway for a period of 20 years and, thus, created a street railway system.  

The circumstances of substantial reliance in 
Peoria Railway
, however, are not analogous to the circumstances in the case at bar.  As we previously discussed, in 
Peoria Railway
, the ordinance itself promised the plaintiff a period of years of monopoly in exchange for a monumental investment.  Here, defendant passed an ordinance that provided instruction on how to obtain a livery license and further provided that 370 licenses would be available unless a hearing was held to increase the amount of licenses.  There was no indication in the ordinance that the amount of licenses, or the procedure for increasing the amount, would remain the same forever, or even that they would remain the same for an extended period of time.  In fact, the history of the ordinance shows a chain of amendments in the years 1952, 1959, 1963 and 1979, which, if known to the plaintiff, would have certainly alerted it to the fact that defendant did not treat this ordinance as immutable.  Moreover, the ordinance in force at the time of plaintiff's first acquisition of licenses specifically stated that it would only be effective for five years, which gave plaintiff ample warning that the ordinance could be amended within three years of its initial purchase.

Moreover, as noted with respect to plaintiff's contract claim, the ordinance was not a promise purporting to be directed to plaintiff, nor does the ordinance name plaintiff, as it did in 
Peoria Ry
.  The ordinance did not purport to preclude subsequent modification or even repeal.  These factors support a finding against promissory estoppel in this case, and this conclusion is strengthened by the fact that, as noted above, "[e]stoppel against public bodies is generally not favored and is allowed in only rare and unusual circumstances."  
Halleck
, 264 Ill. App. 3d at 893, 637 N.E. 2d at 1114.   For these reasons, we find that the facts pled were insufficient to establish the initial element of promissory estoppel, and thus, the entire count of the complaint was properly dismissed.

Having reached this conclusion, we need not consider whether sufficient facts were alleged in plaintiff's complaint related to substantial reliance, the other contested element of the estoppel argument plaintiff now raises.  Accordingly, we conclude that plaintiff failed to plead sufficient facts upon which relief could be granted in this case.

CONCLUSION

For the reasons set forth above, the judgment of the trial court is affirmed.

Affirmed.

CAHILL and McBRIDE, JJ., concur

.

FOOTNOTES
1:
The ordinances referred to herein were not made part of the record in this appeal, but were appended to defendant's brief.  We take judicial notice of these ordinances.  See generally 735 ILCS 5/8-1001 (West 2000).