ESM DEVELOPMENT CORPORATION *et al.*, Plaintiffs-Appellants, v. GALE DAWSON, as the Enterprise Zone Adm'r, *et al.*, Defendants-Appellees.

Fifth District    No. 5—02—0741

Opinion filed August 6, 2003.

Robert E. Becker and Thomas R. Ysursa, both of Becker, Paulson, Hoerner & Thompson, P.C., of Belleville, for appellants.

James C. Cook, of Walker & Williams, of Belleville, for appellees.

JUSTICE KUEHN delivered the opinion of the court:

This case turns on one issue: Do the equitable claims of promis-

sory and equitable estoppel allow for monetary damages? If not, and if the claims are therefore actually legal in nature, then the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1—101 *et seq.* (West 1996)) applies to the facts of this case and a summary judgment was appropriate because the lawsuit was not brought within the relevant one-year statute of limitations for legal actions.

## FACTS

In 1989, an enterprise zone was legislatively created by Franklin County and Benton for the Rend Lake area of Franklin County. The two governmental entities entered into a joint agreement establishing a joint enterprise zone. In this zone, businesses could receive enterprise zone benefits from state and local entities for making property improvements that exceeded $10,000. The benefits to businesses included the following:

> 1. An exemption from sales tax on all materials used in the construction of improvements within the enterprise zone.
>
> 2. A 100% property tax abatement on the value of the improvements for the first five years.
>
> 3. A 50% property tax abatement on the value of the improvements for years 6 through 10.

The terms of this enterprise zone set forth guidelines for the developer that, if followed, entitle the developer to the benefits of the enterprise zone. In an effort to encourage Rend Lake area development, Franklin County and Benton represented to the public that enterprise zone benefits were available for geographically qualifying development.

In 1996, the plaintiffs, ESM Development Corp. and Rend Lake Development Corp., became interested in Rend Lake area development. The plaintiffs planned a multiphased development around a golf course and around Rend Lake. Initially, the plaintiffs became operators and managers of the Rend Lake Golf Course. They built a hotel, Seasons at Rend Lake, right next to this golf course. This hotel was developed under the understanding that it, and thus the plaintiffs, qualified for enterprise zone benefits. During and following the completion of construction, the plaintiffs received the full enterprise zone benefits. The next phase of the development involved the construction of condominiums.

On the basis of past dealings with Benton and Franklin County, as well as the language of the relevant enterprise zone ordinances, the plaintiffs began their condominium development. They approached the zone administrator about the receipt of benefits and ultimately received oral assurances of the benefit's application to this project from Gale Dawson, who, at that time, dually served as zone adminis-

trator and Benton mayor. On February 18, 1998, the plaintiffs received a certificate of eligibility for a sales tax exemption for utilization in obtaining construction materials for this project. On February 17, 1998, Gale Dawson wrote to plaintiff ESM Development Corp. and indicated as follows:

"I have reviewed and approved the Enterprise Zone benefits available through the Benton/Franklin County Enterprise Zone for the Fairway Condominium at Rend Lake ***. These benefits are available to the Rend Lake Development Corporation and the individual owners of the 24 units completed in the first phase of your development. Also, benefits would include property tax abatement for the individual units."

The plaintiffs completed the development of the 24 condominium units. When attempting to sell the first two units, the plaintiffs discovered that neither they nor the ultimate unit purchasers were entitled to the promised tax abatements. This discovery occurred sometime in the fall of 1998. The tax abatements were unavailable because only half of the taxing bodies had passed resolutions agreeing to the tax abatement at issue. Without these resolutions, the ordinances establishing the enterprise zone tax abatements are ineffective.

Thereafter, the plaintiffs made a decision to divest their interest in these condominiums. They allege that their sale of the property was at a loss.

On August 10, 2000, the plaintiffs filed their multicount complaint in Franklin County circuit court. Because of constitutional issues raised, the defendants removed the case to federal court. On October 1, 2001, the federal court granted a summary judgment on the federal causes of action and remanded the remaining state law claims to Franklin County circuit court. The plaintiffs filed a second amended complaint in the state court, to which the defendants responded with motions to dismiss or for a summary judgment. On May 10, 2002, the circuit court granted a summary judgment in favor of defendants Gale Dawson, the City of Benton, and Franklin County and granted motions to dismiss with prejudice on behalf of defendants Juva Wynn (Franklin County treasurer) and David Dobill (Franklin County clerk).

It is from this order that the plaintiffs appeal.

## LAW AND ANALYSIS

### Standing

■ Although little is made of this argument in the briefs on appeal, we must initially address the defendants' argument that this appeal should be dismissed on the basis that the plaintiffs lack standing

to file suit because they were not the record owners of the property on the date that the suit was filed. The circuit court dismissed this theory.

All that standing to file suit requires is that the party has some injury to a legally recognized interest—a real interest in the action and its outcome. *In re Estate of Wellman*, 174 Ill. 2d 335, 344, 673 N.E.2d 272, 276 (1996).

Without regard to whether the claims at issue are equitable or legal, the plaintiffs claim monetary losses as a result of a diminution in property value due to the fact that the property in question was not eligible for enterprise zone tax abatements. If anything, the sale of the property provides more concrete evidence of damages because the loss is not merely hypothetical, but actual. Despite the fact that the plaintiffs no longer own the property at issue, that sale does not alter their claimed loss. The plaintiffs maintain an interest in this matter, and we conclude that the plaintiffs do have standing to sue the defendants.

Cases cited by the defendants are inapposite, dealing instead with a failure to perfect a stay, which precluded redress in the appellate court (*Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 759 N.E.2d 509 (2001)), and the mootness of an appeal due to the party's withdrawal of a permit request, the denial of which was the subject matter of the appeal (*City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 148 L. Ed. 2d 757, 121 S. Ct. 743 (2001)).

## Standard of Review

■ In determining the appropriateness of a summary judgment, the trial court strictly construes all evidence in the record against the movant and liberally in favor of the opponent. *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871 (1986). The court must consider all pleadings, depositions, admissions, and affidavits on file to decide if there is any issue of material fact. *Myers v. Health Specialists, S.C.*, 225 Ill. App. 3d 68, 72, 587 N.E.2d 494, 497 (1992). On appeal, courts review summary judgment orders *de novo. Myers*, 225 Ill. App. 3d at 72, 587 N.E.2d at 497.

■ On appeal from a trial court's involuntary dismissal of a complaint pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2000)), we must determine " 'whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' " *Doyle v. Holy Cross Hospital*, 186 Ill. 2d 104, 110, 708 N.E.2d 1140, 1144 (1999), quoting *Kedzie & 103rd Currency Exchange v. Hodge*, 156 Ill. 2d 112, 116-17 (1983). In other words, our review is *de novo. In re Estate of Mayfield*, 288 Ill. App. 3d 534, 542, 680 N.E.2d 784, 789 (1997).

## Tort Immunity Act

■ Section 8—101 of the Tort Immunity Act states, "No civil action may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8—101 (West 1996).

Equitable claims are not subject to the limitations requirements of the Tort Immunity Act. *People ex rel. Birkett v. City of Chicago*, 325 Ill. App. 3d 196, 204-06, 758 N.E.2d 25, 31-33 (2001).

## Estoppel in General

■ We initially note that estoppel is an equitable remedy, meaning simply that a party is stopped "from claiming or saying something." D. Dobbs, Remedies § 2.3, at 41 (6th ed. 1984). Estoppel does not furnish a basis for a damages claim. D. Dobbs, Remedies § 2.3, at 42 (6th ed. 1984). Estoppel does serve as a defense to a claim of the estopped party. D. Dobbs, Remedies § 2.3, at 42 (6th ed. 1984). In other words, estoppel is not available as a claim but is utilized for defensive purposes—usually in the form of an affirmative defense or as a reply to an affirmative defense.

Estoppel against public entities is rare and not preferred and is allowed only in rare and unusual circumstances designed to prevent fraud and injustice. *Chicago Limousine Service, Inc. v. City of Chicago*, 335 Ill. App. 3d 489, 499, 781 N.E.2d 421, 429 (2002), relying on *Halleck v. County of Cook*, 264 Ill. App. 3d 887, 893, 637 N.E.2d 1110, 1114 (1994).

## Equitable Estoppel

■ Equitable estoppel is defined as "the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in chancery, from asserting rights which might otherwise have existed as against another person who has, in good faith, relied upon such conduct and has been led thereby to change his position for the worse[ ] and who on his part acquires some corresponding right." 18 Ill. L. & Prac. *Estoppel* § 22, at 79 (1956). To be enforceable, the party against whom estoppel is sought must have made misrepresentations or otherwise concealed facts with knowledge that those representations were untrue, which caused the other party to take action prejudicial to his or her position. 18 Ill. L. & Prac. *Estoppel* § 22 (1956); *McInerney v. Charter Golf, Inc.*, 176 Ill. 2d 482, 492, 680 N.E.2d 1347, 1352 (1997).

■ Section 36 of volume 18 of Illinois Law and Practice deals with the procedure of making an estoppel claim, stating:

"The facts constituting any affirmative defense such as estoppel,

or any defense which by other affirmative matter seeks to avoid the legal effect of or defeat the cause of action set forth in the complaint or a counterclaim[,] must be plainly set forth in the answer or reply." 18 Ill. L. & Prac. *Estoppel* § 36, at 122 (1956).

■ Equitable estoppel is designed to prevent fraud and injustice, and the doctrine is utilized as a "shield and not a sword." 18 Ill. L. & Prac. *Estoppel* § 22, at 81 (1956).

■ A party asking that a municipality be equitably estopped must establish the following: "(1) an affirmative act on the part of the municipality; (2) that the affirmative act induced the complained-of action; and (3) that it substantially changed its position as a result of its *justifiable reliance*." (Emphasis in original.) *Tim Thompson, Inc. v. Village of Hinsdale*, 247 Ill. App. 3d 863, 878-79, 617 N.E.2d 1227, 1239 (1993), citing *Haeflinger v. City of Wood Dale*, 129 Ill. App. 3d 674, 677, 472 N.E.2d 1228, 1231 (1984). The affirmative acts that induce reliance cannot simply be the unauthorized acts of a ministerial officer but must be acts of the municipality, such as legislation. *Tim Thompson, Inc.*, 247 Ill. App. 3d at 879, 617 N.E.2d at 1239.

## Promissory Estoppel

■ To establish the validity of a promissory estoppel claim, the party must establish the following elements:

1. An unambiguous promise was made to the party.

2. The party relied upon this promise.

3. The party's reliance upon this promise was reasonable in nature.

4. The party suffered a detriment as a result of this reliance.

*Chicago Limousine Service, Inc.*, 335 Ill. App. 3d at 499, 781 N.E.2d at 429.

## Estoppel Conclusion

Because of the manner in which the trial court reached its decision, whether or not the plaintiffs established the elements of their estoppel claims was not determined. The trial court's order stated:

"Regardless of whether the various counts of the plaintiffs' complaint 'sound in' equitable estoppel, promissory estoppel, negligence, or wilful and wanton conduct, the plaintiffs are seeking monetary damages for the actions, or inactions, of the defendants and their agents. The plaintiffs are not seeking relief 'other than damages'[ ] but are seeking damages from the defendants. Therefore, the Tort Immunity Act and the limitations provision of section 8—101 apply to all counts of the complaint."

In their complaint, the plaintiffs are clearly seeking monetary damages, specifically, "(1) the loss of the incentives and benefits; (2) the divestment of its holdings in the leased premises, Phase I, and Phase

II at a substantial loss; (3) the failure to realize the expected gains from the operation of the leased premises, Phase I, and Phase II; and (4) the loss of credibility and reputation in the community." All damages sought are alleged to have been caused by the plaintiffs' reliance upon representations made by the defendants.

█ Without reaching the issue of the type of relief sought by the plaintiffs, we cannot hold that the claims were proper equitable claims, capable of circumventing the otherwise-expired limitations period of the Tort Immunity Act. Our analysis is simple—estoppel, in either form, is not a proper vehicle for direct relief. Estoppel cannot properly be pled as a cause of action. Estoppel is meant to be utilized as a defensive mechanism—not as a means of attack.

The plaintiffs argue that *Tim Thompson, Inc. v. Village of Hinsdale* stands for the proposition that a plaintiff can sue a municipality for equitable estoppel. While it is true that Tim Thompson, Inc., pursued such a theory, the appellate court affirmed the summary judgment against the plaintiff on this issue. In reaching its decision, there is no discussion of the utilization of estoppel in the assertion of a direct claim, and thus, the case does not stand for that proposition. Simply because another plaintiff pursued such a claim, and the issue of the claim's viability on this basis was not discussed, is not an endorsement that the doctrine can be utilized as a claim rather than a defense.

Furthermore, we cannot ignore the true nature of the relief requested in the plaintiffs' complaint. The plaintiffs seek monetary damages. The allegations of the complaint sound in tortious misrepresentation—a claim where monetary damages are an appropriate prayer for relief. Regardless of the label attached to the plaintiffs' causes of action, the fact remains that they are seeking a legal remedy. An equitable remedy may result in an ultimate monetary relief. However, in this case, the plaintiffs do not seek traditional equitable remedies, which may or may not result in forms of monetary relief, *i.e.*, specific performance and injunctive relief. The plaintiffs directly sought monetary damages. Estoppel does not form the basis for a damages claim.

Finally, the complaint was admittedly not filed within the one-year limitations period.

We conclude that the trial court's order in favor of all of the defendants was not erroneous.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Franklin County is hereby affirmed.

Affirmed.

WELCH and DONOVAN, JJ., concur.